MARVIN, Judge.
After pleading guilty to attempted first degree murder, the 19-year-old defendant appeals his sentence to 40 years at hard labor, contending that it is constitutionally excessive. LSA-Const. Art. 1, § 20.
Defendant contends that he was sentenced to 40 years not because he deserved it, not because it would help the victim, a police officer, but because it was a serious crime and outrageous to society.
The issue is best stated as whether the sentence is grossly out of proportion to the severity of the offense. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, 431 So.2d 854 (La.App. 2d Cir.1983).
With two other young men, defendant went on a crime spree, stealing vehicles, burglarizing or attempting to burglarize vehicles and apartment complexes. They *1174 armed themselves and used firearms to threaten citizens who sought to inquire about their conduct. They were intoxicated to some degree from alcohol and from marijuana.
The record also supports the conclusion that defendant and his confederates discussed their intent to shoot a policeman in the event one attempted to apprehend them.
When the policeman victim arrived at the parking lot of an apartment complex to investigate the activity of the three that had been reported to police, defendant concealed himself in the stolen truck and cocked the pistol he had earlier stolen, a .357 magnum. One of defendant’s confederates was hiding in the bed of the truck, armed with a shotgun.
Defendant said:
I was scooting over [the seat] ... I cocked the gun so it’d be ready to fire ... I stepped out of the truck ... I ... saw him [just] standing there ... I [didn’t] want to be arrested, so I just shot him, hoping that we could get away ... I already had [the gun] cocked and ... I had it down by my side and pulled it up, pointing it at him and shot.
Defendant fired the only two bullets that were in the gun at the policeman. While defendant’s pistol shots fortunately missed the victim, they precipitated a shootout, and caused defendant’s confederate, hiding in the bed of the pickup, to raise up and shoot the policeman in the face with the shotgun at close range. Leaving the seriously wounded victim, the three then fled the scene and were arrested elsewhere a few hours later. The victim’s injuries were permanent and disabling and ended his career as a policeman. He has only 15 percent of his vision in one eye and 29/100 vision in the other. Opthalmologists say his eyesight will likely deteriorate.
The depth of the trial court’s sentencing considerations and the reasons for imposing 40 of the 50 years maximum sentence are well articulated. We approve the trial court’s reasons and quote and paragraph them in part:
THE COURT: Do either of you gentlemen have any corrections or point out any inconsistencies or errors in the pre-sentence investigation?
[Attorney] No, Your Honor, other than to request that the letters that were provided ... be filed in the record.
THE COURT: All right. They were considered and they will be ordered attached to the pre-sentence investigation ... this particular offense ... occurred after a spree, if you will, of criminal behavior involving this defendant, John Durr, and, allegedly, Mr. Argo. The facts ... indicate that after an aborted automobile burglary or attempted auto theft these subjects went to an apartment complex located in Caddo Parish. Officer Slaw-son had been dispatched to the scene ... he was shot, allegedly by Mr. Argo who was hiding in .the back of the pickup truck with a shotgun. According to the pre-sentence investigation the shooting incident left Officer Slawson basically blind....
The record indicates the defendant ... was raised alternately by his mother and father; their marriage resulted in a separation and divorce at the defendant’s early age. Both parents ... are hard workers. Both are employed at Western Electric ... The defendant ... went to ... School Away From School at Rutherford House. He has been involved in ... the Rutherford House program with Ms. Jerri Alexander. She stated that the defendant had completed their program satisfactorily, and ... while he was there posed no major disciplinary problems. I have read and reread and reread the pre-sentence investigation in this case. The facts are ... extremely serious. The defendant is of a young age; he’s only now eighteen years of age, he won’t be nineteen, I believe, until September of ’84. The maximum possible sentence would be fifty years at hard labor. There were other charges against the defendant which have been dismissed. Following the guidelines under Article 894.1 of the Louisiana Code of Criminal *1175 Procedure, I do find there is an undue risk that during the period of a suspended sentence or probation that the defendant would commit another offense. Of course, it’s impossible to know what a person is going to do. I know surely the defendant has learned something from his behavior in this particular matter; he’s been in jail since it occurred. There is no indication that he doesn’t have the sense to realize that he’s done extremely wrong. I do feel, however, that the defendant is in need of correctional treatment, and that a custodial environment can best be provided for the defendant in a penal institution. Any lesser sentence than what I’m going to impose in this matter would deprecate the seriousness of the defendant’s crime.
I think primarily this is the major area upon which I need to comment further insofar as sentencing this young man. When a police officer is called to the scene it has got to be considered low percentage for three teenagers to try to kill him on that occasion, upon the investigation of not a shooting incident, not of a beating, not of a gang fight, but of a burglary or auto theft. And for that officer to be wounded in the process and practically blinded for the rest of his life — Officer Slawson has a family and is a relatively young man, as well. He has been deprived of his livelihood as a police officer, he has been deprived of his eyesight permanently. He has been deprived of some of the joys and pleasures of fatherhood, parenthood, participation that he previously enjoyed.
The seriousness of this offense dictates primarily the sentence to be imposed. I do find that the defendant’s criminal conduct caused serious harm. It’s true that the defendant did not hit the police officer with one of his shots; he shot twice in the direction of the officer. The officer was not hit with either of the slugs from either a .38 or .357 shell. But I do find that the defendant contemplated that his criminal conduct would cause or threaten serious harm. I don’t find any provocation for the defendant’s action. The defendant told the police officers during his statement that he shot at the police officer so that he wouldn’t go to jail. That is not sufficient provocation to be serious mitigation for this sort of an offense.
Likewise, there are no substantial grounds tending to excuse or justify the defendant’s criminal conduct, or fail to establish a defense. The defendant ... Mr. Edwards, said that they had been driving around, joy-riding, in a stolen truck for some time. They had been down, I think, to Marthaville or somewhere hunting previous to this occasion. They had been drinking and smoking marijuana. They did have the presence of mind to try to switch vehicles and steal a Mustang when they were interrupted by a couple at another apartment complex. They also had the presence of mind to back the truck in to the apartment complex. And the defendant had the presence of mind to slide from the vehicle and cock the gun in an effort to conceal the gun from the police officer before the shooting. I don’t find the intoxication, if any, or the use of marijuana or alcohol was sufficient to tend to excuse or justify the defendant’s criminal conduct. The victim in this matter certainly did not facilitate in its commission. There is no indication that the defendant has compensated or could possibly compensate the victim for any damage or injury that he sustained. I don’t think any sort of compensation is possible for these sort of injuries. The defendant is considered a first felony offender. The probation officer indicates there is a juvenile record at the Caddo Parish Juvenile Court, but primarily they go on to say that the defendant is a first felony offender. There are not offenses that occurred while the defendant was age seventeen or over. I do believe that the defendant’s criminal conduct was a result of circumstances likely to reoccur. The defendant’s mother indicated that basically he had a very positive attitude; that this began to deteriorate when the *1176 defendant started running around with Bruce Argo and John Durr. These sort of things where teenaged boys are out together very frequently are certainly not unusual. What’s unusual is when they do something extremely stupid like this.
I’m unable to comment on the character and attitude of the defendant. The law says I need to comment on the character and attitude of the defendant as to whether they indicate that he is unlikely to commit another crime. I can’t look into this man’s mind; I don’t know anything about his attitude or character. The only way I can judge his attitude or character is by the information contained in the pre-sentence investigation report, and also his appearance and mannerisms in the courtroom, as well as the facts of the case.
As I indicated earlier basically it’s the facts of this particular case which dictate a harsh sentence, a severe sentence and a lengthy term of imprisonment.
I do not believe probationary treatment is called for in this case, however, I have no reason to believe that the defendant might respond favorably at a later time to probationary or parole treatment. Apparently he has been on programs at the Rutherford House and on probation, I believe, through the juvenile court previously, and they indicated satisfactory completion of those programs.
I don't find any evidence whatsoever that the imprisonment would entail excessive hardship to himself or his dependants. There is no indication that he has any dependants insofar as children are concerned. Both his mother and father are not his dependants, they are working on their own. Mr. Edwards, is there anything that you want to say before I impose sentence?
MR. EDWARDS: No, sir. I really don’t have anything to say except that I’m sorry that I committed the crime.
THE COURT: It’s always difficult for me to impose a jail sentence on a young person, particularly an eighteen year old. Probably some of the hardest things I’ve ever done is impose sentences on seventeen and eighteen and nineteen year old young men and young women. But that’s part of my job, Mr. Edwards, and I take my job seriously. This is a serious offense for which you must receive a serious sentence. The maximum penalty in this matter is fifty years hard labor. I do not believe that sentence is called for in this particular set of circumstances. However, I do believe that a sentence of forty years at hard labor is in order. Accordingly, that is the sentence of the Court. You do have the right of appeal, and you are to be given credit for time served. I want you to talk to [your lawyer] concerning your appeal rights so that those matters can be addressed.
Since Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910), the precept that punishment for crime should be graduated and proportioned to the offense has been accepted as fundamental. See authorities cited in State v. Goode, 380 So.2d 1361, 1364 (La.1980):
[T]he United States Supreme Court in recent years has adopted a standard that a sentence is excessive when it is grossly out of proportion to the severity of the crime. Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977); Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Under the standards set forth in Gregg, a punishment is “excessive” and unconstitutional if it (1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime. * * * Thus in determining what is excessive punishment both under the federal and our state constitutions the harshness of the penalty must be compared with the severity of the offense.
Emphasis supplied.
We cannot say that this sentence for attempted first degree murder (LRS 14:30, *1177 27), is grossly out of proportion to the severity of the offense.
The trial court did not manifestly abuse its wide discretion in sentencing defendant to 40 years at hard labor. State v. Moli-nario, 400 So.2d 596 (La.1981). The sentence is less than maximum and is AFFIRMED.