688 So.2d 1277 (1997)
STATE of Louisiana
v.
Willie WILLIAMS, Jr.
No. CR96-652.
Court of Appeal of Louisiana, Third Circuit.
February 5, 1997.
*1278 Bernard E. Boudreaux Jr., Dist. Atty., for State of Louisiana.
Gary F. LeGros Jr., Franklin, Willie F. Williams Jr., for Willie F. Williams Jr.
Before WOODARD, SULLIVAN and GREMILLION, JJ.
WOODARD, Judge.
Defendant was convicted of attempted first degree murder for shooting a police officer when the officer attempted to stop the vehicle for speeding. The defendant had filed an Anders brief to this court. We affirm.

PROCEDURAL HISTORY
On February 21, 1991, the defendant, Willie Williams Jr., was arrested for attempted first degree murder of a police officer. On March 27, 1991, a grand jury returned an indictment against the defendant. Trial of the matter began on November 19, 1991, and the jury returned its verdict on November 22, 1991. On December 19, 1991, the trial court sentenced the defendant to 40 years at hard labor. Though the motion for appeal was filed on January 10, 1992, the record of the appeal was not lodged more than until four years later, May 11, 1996, because the court reporter's health problems delayed her transcribing the proceedings.
Counsel for the defendant filed an Anders brief on June 28, 1996, and this court sent the defendant notice of the filing on July 1, 1996. The defendant replied on July 10, 1996 that he would file a supplemental brief, but no supplemental brief has been received as of December 5, 1996.

FACTS
During the evening of February 20, 1991, Officer Neil Lewis of the Breaux Bridge Police Department noticed two vehicles speeding in excess of 80 miles per hour in a 55 miles per hour zone. A Chevrolet Nova was in pursuit of another vehicle. The officer began pursuit of the second car, the Chevrolet Nova, through the town of Breaux Bridge. Suddenly, the vehicle turned on a *1279 darkened road and stopped. When Officer Lewis skidded to a stop to the left of the vehicle, someone inside the Nova began to fire shots into the officer's patrol car. The officer could not see who was firing the shots, but he knew that he had been hit and called for assistance.
In was later discovered that there were four occupants inside the Nova: Misty Dugas, Tracy Sherman, Gene Celestine, and the defendant, Willie Williams, Jr. Gene Celestine had been driving. The defendant had been sitting in the front passenger seat. Tracy Sherman, the girlfriend of the defendant was seated behind the driver. Misty Dugas, the girlfriend of Celestine, was seated behind the defendant. After the shooting, they drove to Lafayette.
Once in Lafayette, Sherman and Dugas remained at the home of Celestine's mother while the two men left to go burn the Nova on a road outside of Lafayette. The next day, the two couples left for Duson in order to pick up the two children of Sherman and the defendant. The group then planned to return to the defendant's home in Houston, Texas. On their way to Duson, Celestine threw the .45 caliber handgun used in the shooting into a canal, but a 9-mm handgun remained in the vehicle.
After the shooting, the police had received a tip, apparently from one of the occupants of the vehicle that was being chased by the defendant on the night of the shooting, that Celestine and a man known as "Big Willie" were involved. The police were also given a beeper number where "Big Willie" could be reached. At the same time, the burned-out shell of the Nova had been recovered, and from the serial number on the car, the police discovered the vehicle was a rental vehicle leased to the defendant. The police soon learned that the defendant and his companions were traveling in Celestine's car, and a "be on the lookout" notice (BOLO) was released for the suspects.
On the interstate in Crowley, the police stopped a vehicle matching the description of Celestine's car and found Misty Dugas driving, and as passengers, Tracy Sherman, the two children, Celestine, and the defendant. The police separated the four adult suspects and obtained statements from them. Tracy Sherman, Misty Dugas and Gene Celestine all stated that the defendant was the shooter. All four were indicted for attempted first degree murder of a police officer.
At trial, the state established that the .45 caliber handgun retrieved from the canal outside of Duson was the same gun that fired the .45 caliber bullets and casings found near or inside the officer's car and in the ashes of the burned-out Nova. The police also learned that both the .45 caliber handgun and the 9-mm handgun seized at the time of arrest were stolen.
The jury unanimously voted to convict the defendant of the crime charged. After the defendant's conviction, he was sentenced to 40 years at hard labor.

ASSIGNMENT OF ERROR
This appeal asks for a review of trial record for errors pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

LAW

ANDERS REVIEW
Counsel for the defendant has moved to withdraw because he believes, after a conscientious review of the record, there are no non-frivolous issues to be raised on appeal. In his brief, counsel has stated he has complied with the procedures outlined in Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), as interpreted by State v. Benjamin, 573 So.2d 528 (La.App. 4 Cir. 1990). This court forwarded a copy of counsel's brief to the defendant on July 1, 1996, and the defendant replied on July 10, 1996 that he would file a supplemental brief. As of this date, a supplemental brief has not been filed.
In State v. Mouton, 95-0981 (La.4/28/95); 653 So.2d 1176, the Louisiana Supreme Court approved the Anders procedure adopted in State v. Benjamin, 573 So.2d 528 (La.App. 4 Cir.1990). In Benjamin, 573 So.2d at 531, the fourth circuit discussed the standard of appellate review for an Anders appeal:

*1280 This court's review of the record will consist of (1) a review of the bill of information or indictment to insure the defendant was properly charged; (2) a review of all minute entries to insure the defendant was present at all crucial stages of the proceedings, the jury composition and verdict were correct and the sentence is legal; (3) a review of all pleadings in the record; (4) a review of the jury sheets; and (5) a review of all transcripts to determine if any ruling provides an arguable basis for appeal.
(Emphasis added).
As per Benjamin, 573 So.2d 528, this Court has performed an independent, thorough review of all the pleadings filed in the district court that are contained in the record, all minutes entries of the district court proceedings, the bill of information, and the pertinent transcripts contained in the appellate record. The defendant was properly charged, by bill of indictment filed March 27, 1991, with attempted first degree murder in violation of La.R.S. 14:30 and 14:27. The bill of indictment was signed by the grand jury foreman. The defendant was present at each stage of the proceedings from arraignment on April 22, 1991, through trial in November of 1991. Although the defendant initially said he or his family would retain counsel to represent him, the defendant was represented by stand-in counsel at arraignment and at the bond reduction hearing, and the Indigent Defender's Office was appointed to represent the defendant on July 19, 1991.
The defendant filed a motion to reduce bond, although it does not appear in the record, and the trial court heard this motion on July 1, 1991. The trial court reduced the defendant's bond from ten million dollars to one million dollars. The trial court conducted several pretrial hearings concerning representation of the defendant. The trial court ultimately ruled that the Indigent Defender's Office would represent the defendant until the defendant retained counsel, and then the indigent defender would stand-by to assist retained counsel.
No other pretrial motions were filed in this case. The lack of any pretrial motions such as discovery motions or suppression motions in the record is troubling. It took over four years from filing of the motion for appeal for the record of appeal to be filed, and when it finally was, it was deficient. This court had to request a supplemental record of all court minutes from the defendant's first court appearance until jury selection in order to complete the error patent review. In addition, the defendant was indicted by a grand jury, yet the appellate record contains absolutely no records about the impaneling of the grand jury. Since the defendant has not attacked the method of selecting the grand jurors nor the grand jury indictment, such information is not needed, but it should have been included in the appellate record lodged. We mention these deficiencies to point out that we are not certain that the defendant did not file any other pretrial motions. The defendant may have filed these motions, but they have not been included in the record. Furthermore, the defendant may not have objected because he was satisfied with whatever response the state gave or he was granted open file discovery.
Before the trial, the state properly served notice pursuant to La.Code Crim.P. art. 768 that it intended to introduce evidence of the defendant's incriminating statements to Deputy Pat Calais. Jury selection began on November 19, 1991. The defendant exercised all twelve of his peremptory challenges, and the state exercised five peremptory challenges. There were no objections during jury selection, such as a Batson objection nor any objection to the trial judge's refusal to grant all of the defendant's challenges for cause.

MARITAL PRIVILEGE
The defendant filed a motion in limine in an attempt to exclude the testimony of Tracy Sherman, although this motion is not contained in the appellate record. The grounds for the motion was the marital privilege of La.R.S. 15:461. The defendant and Sherman had been living together, on and off, for three years. In addition, they had two children at the time of the shooting, and a third child was born two weeks before trial. At the time of the defendant's trial, La.Code Evid. art. 504 and art. 505 had not been enacted. Instead, La.R.S. 15:461 (Repealed *1281 by Acts 1992, No. 376, § 6, eff. Jan. 1, 1993) applies to the defendant's case. La.R.S. 15:461 provided, in pertinent part:
The competent witness in any criminal proceeding, in court or before a person having authority to receive evidence, shall be a person of proper understanding, but;
(1) Private conversations between husband and wife shall be privileged.
(2) Neither husband nor wife shall be compelled to be a witness on any trial upon an indictment, complaint or other criminal proceeding, against the other.
The defendant could not prevent Sherman from testifying for two reasons. First, the defendant's communications with Ms. Sherman were not confidential since they were made while in the presence of others, namely Celestine and Dugas. State v. Narcisse, 426 So.2d 118 (La.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176; State v. Landry, 502 So.2d 281(La.App. 3 Cir.), writ denied, 508 So.2d 63 (La.1987). Second, and more importantly, although full faith and credit is given to common-law marriages originating in other states, Louisiana law does not recognize common-law marriages originating in Louisiana. Pursuant to La.C.C. art. 91, in order to be legally married, the parties are required to participate in certain formalities as outlined by the article. In the present case, the defendant and Sherman were not legally married but had an on-again, off-again relationship. Therefore, they were not married under the law of the state, and the marital privilege exception could not apply.

MOTIONS FOR MISTRIAL
During the trial, there were two motions for mistrial. The first motion for mistrial concerned reference to a beeper. The defendant argued that such reference implied that the defendant was a drug dealer and, as such, introduced other crimes evidence which caused him to suffer prejudice in the eyes of the jury. The motion was denied by the trial judge.
La.Code Crim.P. art. 770, in pertinent part, states:
Upon motion of defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
* * * * * *
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
However, "[t]his article is not applicable unless the inference clearly constitutes a comment on other crimes committed or alleged to have been committed by the defendant." State v. Rhodes, 95-54, p. 4 (La.App. 5 Cir.6/28/95); 657 So.2d 1373, 1376-77 (citing State v. Berthelot, 513 So.2d 1228 (La. App. 4 Cir.1987), writ granted in part on other grounds, 516 So.2d 127 (La.1987)). In Rhodes, the court held that a mistrial was not warranted if the reference was not plainly recognizable by the jury as a reference to other crimes. See also State v. Dukes, 609 So.2d 1144 (La.App. 2 Cir.1992), writ denied, 618 So.2d 402 (La.1993). Therefore, there must be a distinct or recognizable reference to another crime alleged to have been committed by the defendant before La.Code Crim.P. art. 770 applies. This court finds that the mere reference to a beeper does not constitute a distinct reference to other criminal activity.
The information regarding the beeper came out at trial, when Deputy Butch Dupuis testified about the anonymous call regarding the shooting. The caller gave police a beeper number for "Big Willie," one of the suspects. The police called the beeper number and learned that it was working, however, no one responded to the page. Later, Celestine testified that the defendant decided to return to Houston because "the law" was beeping him on his beeper. There was no mention of *1282 any other criminal activity connected to the defendant's ownership of the beeper. The evidence was merely introduced to establish how the police eventually located the defendant and his companions and to establish the accuracy of the anonymous caller's information. Therefore, the trial judge properly denied the first motion for mistrial.
The second motion for mistrial stemmed from a news broadcast about the trial that referred to the defendant as being a large scale drug dealer from Houston looking to expand his territory to the Lafayette area. On November 21, 1991, both the state and the defense had completed the presentation of evidence, and as the jurors were leaving the courthouse, a local television newsman attempted to question one juror. Later that evening, the local television station aired a segment on the trial and the defendant's alleged drug dealing activity. The defendant argued that the broadcast had an overly prejudicial impact on the jury.
In State v. Sanders, 93-0001, p. 21 (La.11/30/94); 648 So.2d 1272, 1288, the Louisiana Supreme Court addressed a claim similar to that presented here:
Under LSA-C.Cr.P. art. 775, a trial court must declare a mistrial on motion of the defense when "prejudicial conduct inside or outside the courtroom makes it impossible for the defendant to receive a fair trial." That "prejudicial conduct" can include pretrial publicity. State v. Russel [Russell], 416 So.2d 1283, 1290 (La.1982). However, "a mistrial is not warranted absent a determination that the jurors were actually exposed to the publicity in question and were so impressed by it as to be incapable of rendering a fair and impartial verdict." Id. "The determination of whether prejudice has resulted lies in the sound discretion of the trial judge." State v. Smith, 430 So.2d 31, 44 (La.1983).
The defendant objected to the actions of the media and requested a mistrial the following day. In order to establish whether the jurors had, in fact, been exposed, the trial judge called in and questioned all jurors and the alternates. In addition, both the defendant and the state were given the opportunity to question the jurors. One juror stated that when the newsman attempted to ask him a question, he replied "No comment." One of the alternate jurors admitted she heard the news broadcast. She was, therefore, excused. Some of the other jurors had heard about the news broadcast but only recalled that it said a verdict was to be returned the next day. No other jurors were excused, and the defendant's motion was denied.
In the case sub judice, the record presents us with ample evidence regarding the trial court's substantial questioning of the jurors to ensure that no prejudice was suffered by the defendant. All parties had the opportunity to question the jurors regarding the broadcast. This court finds, as did the trial judge, that in the present case, the totality of the circumstances surrounding the jurors' exposure to the news broadcast does not present sufficient grounds to warrant a mistrial. In addition, we find that the trial judge's reasoning in denying the motion for mistrial was sound. Accordingly, we find no error in the trial court's ruling denying the motion for mistrial.

JURY INSTRUCTIONS
The defendant requested several special jury instructions, some of which were included in the final jury instruction. These special requested instructions are not included in the record, but the trial judge and the parties referred to them, and it is apparent that the defendant and the state both submitted written requests that were considered by the trial court. The trial judge included a special instruction on prior inconsistent statements and that the jury could consider the motive of a witness. The defendant objected to the inclusion of the state's requested instruction about flight and the inferences that could be drawn from this action, and the defendant objected to the trial court's failure to include his other special requested jury instruction on weighing the testimony of a witness who has a prior conviction.
La.Code Crim.P. art. 807 governs special requested jury instructions. It provides:
The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. *1283 Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
According to La.Code Crim.P. art. 807, a trial court need not read a requested charge "if it is included in the general charge." The charge read need not duplicate exactly the requested charge, even if the requested charge represents a correct statement of law. State v. Eaton, 524 So.2d 1194 (La.1988). Instead, a reviewing court must ascertain whether, "[w]hen the general charge is considered in its entirety," it left the jury with a correct understanding of the law. State v. Taylor, 93-2201, p. 17 (La.2/28/96); 669 So.2d 364, 384. This court finds that the defendant's requested jury instruction that was excluded was sufficiently covered by the general charge on witness credibility. Furthermore, the inclusion of the charge on flight was not error. See State v. Hosford, 572 So.2d 242 (La.App. 1 Cir. 1990), writ denied, 576 So.2d 27 (La.1991).

OTHER CRIMES EVIDENCE
Although the defendant moved for a mistrial regarding the reference to his beeper, the defendant did not object to actual other crimes evidence introduced at the trial. For example, the defendant's traveling companions all testified how the defendant changed the license plate on Celestine's car with the license plate for Misty Dugas's car. Also, there was reference to the fact that both the.45 caliber handgun, used in the shooting, and the 9-mm, recovered at the time of the arrest, were also stolen. Not only did the witnesses for the state refer to the stolen firearms, but counsel for the defendant also brought out these facts in his questioning of the witnesses. Although, at trial, the defendant denied that the 9-mm was his gun, according to the witnesses, the .45 caliber handgun was the defendant's gun. In either situation, the defendant was in possession of stolen property, and changing the license plates was also a crime.
The problem with addressing this issue is that the defendant failed to object at trial, and he has failed to brief this issue on appeal. As stated above, the standard of appellate review for an Anders appeal directs this court to review all transcripts to determine if any ruling provides an arguable basis for appeal. Benjamin, 573 So.2d 528. In the present case, however, there are no rulings by the trial court on the admissibility of the additional other crimes evidence because the defendant did not object at trial to the witnesses testifying about the defendant's criminal activity. In State v. Smiley, 93-2093 (La.App. 4 Cir.5/17/94); 638 So.2d 299, another Anders appeal, the fourth circuit noted that a review of the trial transcript raised serious questions regarding whether the jury was unduly influenced by an exchange which took place on cross-examination of the defendant by the prosecutor. However, this arguably non-frivolous issue had not been the subject of a contemporaneous objection at trial. Therefore, the fourth circuit ruled:
Notwithstanding the doubtful validity of this line of questioning, the defendant's attorney failed to object or to ask for a mistrial. Because the defendant neither assigned nor briefed this issue, this issue cannot be addressed on appeal.
Smiley, 638 So.2d at 301.
Accordingly, this court cannot address the issue of other crimes evidence since it was never the subject of any ruling by the trial court. Even if counsel for the defendant had briefed this issue, this court could not consider it since the defendant did not contemporaneously object at trial whenever the other crime evidence was presented. La. Code Crim.P. art. 841. Therefore, this issue was not properly preserved for appellate review and should not be considered.

DEFENDANT'S REQUEST TO DELIVER CLOSING ARGUMENT AT TRIAL
Finally, the defendant addressed the court at the end of the trial and requested that he *1284 be allowed to give a closing argument. The trial judge eventually denied the defendant's request because of the defendant's behavior while on the witness stand. The state was concerned that the defendant would attempt to testify before the jury and not limit his remarks to closing arguments. In a recent ruling in State v. Thibodeaux, 96-0656 (La.3/15/96); 669 So.2d 1207, the Louisiana Supreme Court ordered the trial court not to grant a defendant in a first degree murder case the right to address the jury in the penalty phase unless the defendant subjected himself to cross-examination. The defendant in Thibodeaux argued that he had a right of allocution before the sentencing jury. The right of allocution has normally been reserved to a defendant addressing the sentencing judge. See State v. Champagne, 506 So.2d 1377 (La.App. 3 Cir.1987).
This court finds that the trial judge did not abuse his discretion when he denied the defendant's request. As is apparent from the transcript, the defendant rambled considerably while on the witness stand. The danger of allowing an individual defendant to give closing arguments is that the defendant will attempt to testify without being under oath, introduce additional testimony without being subject to cross examination, and exceed the limits for closing arguments. This ruling did not prejudice any substantial right of the defendant.

PRE-SENTENCE INVESTIGATION REPORT
The trial judge ordered a presentence investigation report prior to sentencing the defendant. At sentencing, the trial judge took many factors into account including: the defendant's past criminal convictions; his pending murder charge in Texas and other arrests; the defendant's statements to witnesses that he wanted to go back and kill the police officer; and the fact that the defendant was technically considered a first felony offender. The trial judge also considered the facts and circumstances of the present offense.
The statutory range for attempted first degree murder committed in 1991 was not more than 50 years. (In 1995, the sentencing range was increased to "not less than ten nor more than fifty years without benefit of parole, probation, or suspension of sentence." La.R.S. 14:27(D)(1)). The defendant was sentenced to 40 years at hard labor, with credit for time served. This court finds that the sentence is not illegal nor unconstitutionally excessive since defendants convicted of attempted first degree murder of a police officer have received similar sentences even when they had no prior criminal history. See, e.g., State v. Allen, 478 So.2d 589 (La. App. 2 Cir.1985), sentence affirmed as amended to delete firearm enhancement, 496 So.2d 301(La.1986); State v. Argo, 476 So.2d 409 (La.App. 2 Cir.1985), writ denied, 481 So.2d 1347 (La.1986); State v. Edwards, 467 So.2d 1173 (La.App. 2 Cir.1985).

CONCLUSION
This case is illustrative of the differences between meritless arguments and frivolous arguments. Based upon the record as presented, there is no merit to any of the issues raised at trial by counsel for the defendant, although these arguments could not be dismissed as frivolous. In applying the test set forth in Anders, we are unable to agree with counsel for the defendant that only frivolous issues are present for appeal. As such, counsel's request to withdraw is denied. Nevertheless, the defendant's conviction is affirmed, as the issues raised are without merit. It would be a waste of judicial resources, as well as an exercise in futility, to order that counsel resubmit his arguments in the form of an appeal when the arguments presented have no merit. Therefore, the judgment of the trial court is affirmed. The convictions and sentence of the defendant are affirmed.
AFFIRMED.