956 So.2d 641 (2007)
In re INTRA FAMILY ADOPTION OF A.G.T. by her Stepfather, J.L.S.
No. 06-CA-805.
Court of Appeal of Louisiana, Fifth Circuit.
March 13, 2007.
Writ Denied May 4, 2007.
*643 Kenneth A. Goodwin, New Orleans, Louisiana, for Plaintiff/Appellee, J.L.S.
Terri M. Miles, Gretna, Louisiana, for Defendant/Appellant, R.P.T.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY, and FREDERICKA HOMBERG WICKER.
SUSAN M. CHEHARDY, Judge.
This is an appeal of a final decree of adoption, issued after the trial court found the biological father had forfeited his right to consent to the adoption by failing to make child support payments for a period of six months or more and by failing to communicate with the child for a period of six months or more. The biological father has filed a suspensive appeal.[1] We affirm.
FACTS
S.L.S. and R.P.T. were married in 1988 and a child was born of the marriage in 1993.[2] The couple divorced in 1995. In 1996 the mother, S.L.S., was awarded sole custody of the child, A.G.T. The father, R.P.T., was awarded visitation rights on a schedule set out in the judgment. In 1997 S.L.S. married J.L.S. As A.G.T.'s stepfather, J.L.S. is the petitioner for adoption.
Pursuant to an October 11, 2001 judgment of the district court, R.P.T. was obligated to make child support payments of $534.25 per month on the first day of each month. On August 1, 2005 R.P.T. made his monthly child support payment.
On August 28, 2005the day before Hurricane KatrinaS.L.S., J.L.S., and A.G.T. evacuated to Baton Rouge, where they checked into a hotel. S.L.S. telephoned R.P.T., who lives in Baton Rouge, and told him he could exercise visitation with his daughter since they were in Baton Rouge, and he did so. R.P.T., however, did not see his daughter or make child support payments for several months thereafter.
We take judicial notice that Hurricane Katrina struck south Louisiana on August 29, 2005. Its devastating effects have been well-documented not only by the popular media, but also in official records.[3] The effects include lengthy displacement of persons living in the affected area, as well as disruption of public services, private businesses, and government functions for weeks and months afterward. Jefferson *644 Parish, where A.G.T., S.L.S. and J.L.S. live, is within the affected area.
On April 13, 2006, J.L.S., as A.G.T.'s stepfather, filed the instant proceeding for intrafamily adoption of A.G.T. in the juvenile court. His petition alleged that R.P.T. had "refused or failed to comply with the court order of support without just cause for a period of at least six months, the last payment being made on or about August 1, 2005."
The petition for adoption was tried on June 5, 2006.
At the hearing S.L.S. testified that she, J.L.S., and A.G.T. stayed at the Baton Rouge hotel for about ten days after the hurricane, then moved to a house in Baton Rouge for about two weeks. They returned home to Metairie before the end of September 2005, because their house had sustained no significant damage from the storm. They have lived there ever since. Further, their telephone was functional when they returned home and has continued to be functional since then.
S.L.S. said that while they were still in Baton Rouge, after they had moved from the hotel to a house, she attempted to locate R.P.T. to let him know where they were. She went to his home, which is in Baton Rouge, but he was not there. She left a note on his front door, telling him how to get in touch with them and where they were, and also left a note for him at the hotel where they had stayed. She said she did not telephone him because "phones weren't working real well in Baton Rouge, sometimes you would get calls, sometimes you wouldn't."
Even after they returned home, she said, when they would leave the house they would leave a note on the front door in case R.P.T. came by. S.L.S. testified, "[W]e never saw him, never heard from him again . . . until April."
Around the end of March 2006, R.P.T. began calling A.G.T. on her cell phone again. A.G.T. did not call him back because she did not want to see him.
S.L.S. testified further that on April 28, 2006, R.P.T. called her to arrange for visitation with A.G.T. He also gave S.L.S. a check for child support.
A.G.T. testified that her father had not called her on her home telephone since before the hurricane. He had called her cell phone beginning at the end of March (2006), but she did not answer the calls and did not call him back. She testified she calls J.L.S., her stepfather, "Dad," he drives her to school every morning, she has a good relationship with J.L.S., and she loves him. J.L.S. has two adult children, a son and a daughter, her stepbrother and stepsister. A.G.T. testified she is very close to her stepsister, and also very attached to her stepbrother's son. A.G.T. said she wanted J.L.S. to adopt her and to become her father officially.
On cross-examination by R.P.T. (who represented himself at the adoption hearing), A.G.T. denied receiving any e-mail messages from him, or receiving any Christmas or birthday cards from him. He asked her, "Do you love me?," and she told him, "Not right now." When he asked why she did not want to see him any more, she said, "I don't want to see you because you didn't . . . bother to come . . . see me, you haven't called till just recently. You haven't sent me any e-mails, you haven't tried to come see me, or talk to me at all."
The court asked A.G.T. whether there was anything else she wanted to tell the court in connection with the adoption, and A.G.T. responded, "I very much want it to happen and that's all." The court asked whether anyone had put any pressure on *645 her to say that, and A.G.T. responded, "No, that's my opinion, that's how I feel."[4]
R.P.T. testified as the only witness in his own behalf. He read into the record a letter he had written as an answer to the petition for adoption, in which he stated he had sent regular child support payments for years, with the last one for August of 2005; that after Hurricane Katrina hit, he did not know where S.L.S. had moved; that there had been no return phone calls and no visitation since August 28, but that he had made numerous attempts by cell phone.
R.P.T. stated he mailed a motion to obtain overnight visitation in November 2005, but the district court did not receive it. He submitted the same motion on December 15, 2005, but it was denied because it was not in proper form. He submitted a revised motion on January 10, 2006, to which S.L.S. responded with an exception of prematurity.
R.P.T. testified he tried to pick up his daughter on Sunday, April 9, 2006, but no one was at the Metairie home. He said he sent child support checks in February 2006 and March 2006, but neither check was cashed. Because those two checks were never cashed, he sent no more checks until he handed S.L.S. a check on April 28, 2006, in front of the hearing officer. He said that check also had not been cashed. R.P.T. also produced telephone records showing he placed calls to A.G.T.'s cell phone several times in March and April of 2006.
At the time of trial R.P.T. was working offshore, on a schedule of three weeks on and three weeks off. Until February 2006, however, he had worked for a land-based company in Baton Rouge. He admitted he had the ability to make child support payments. He also admitted he had failed to make child support payments from August 2, 2005 until February 3, 2006, but said it was because he was unable to locate S.L.S. or A.G.T. He admitted he did not drive to the Metairie home of S.L.S. and A.G.T. during that time. He testified he tried calling A.G.T. to set up visitation, and tried calling S.L.S., but never heard from either of them.
On questioning by the court, R.P.T. admitted that after his one visit with A.G.T. on August 28, 2005, when he picked her up from the hotel in Baton Rouge, he did not return to the hotel. He said he phoned the hotel on September 3 or 4, 2005, but when he tried again later, he spoke to J.L.S.'s son, who told him S.L.S. and A.G.T. had moved out and had rented a house in Baton Rouge. He admitted he did nothing after that. He claimed he tried calling the land line phone to their Metairie home three or four times, but couldn't get through.
On July 24, 2006 the parties returned to court in order to receive the court's decision. The court issued a Final Decree and Judgment that granted the petition for adoption.
In lengthy and thorough written Reasons for Judgment, the juvenile court recounted the procedural history of the matter, as well as the documentary and testimonial evidence the court considered. The court concluded that R.P.T.'s financial support had been neither substantial nor consistent, and noted specifically that R.P.T. admitted he had paid no child support from August 2005 to February 2006, while S.L.S. claimed she received no payments from R.P.T. until April 27, 2006, when he handed her a check while the *646 parties were at a hearing on his request for increased visitation.
The court found the evidence and testimony supported S.L.S.'s assertions that R.P.T. had ample resources and opportunity to locate her and pay her child support. The court stated it gave no weight to the "self-serving testimony" of R.P.T. that he sent two checks to S.L.S. beginning in February 2006. The court found that J.L.S. proved by clear and convincing evidence that R.P.T. failed to pay court-ordered child support from August 2005 through April 2006, a period in excess of six months. Based on all the testimony, the court held that R.P.T. had forfeited his right to consent to the adoption.[5]
In an abundance of caution, the court also addressed the second ground listed in La.Ch.C. art. 1245(C), visits and contact with the child. The court found R.P.T.'s testimony that he did not know where to find S.L.S. to arrange a visit with A.G.T. was not credible. The court stated the evidence and testimony supported S.L.S.'s assertions that R.P.T. had ample resources and opportunity to locate S.L.S. and arrange visitation with A.G.T., and that S.L.S. made no attempt to hide A.G.T. from R.P.T.
The court held J.L.S. had proved by clear and convincing evidence that R.P.T. did not attempt to visit or contact A.G.T. from the end of August 2005 through late March 2006, a period in excess of six months. In addition, the court found that R.P.T. failed to prove he had just cause for not visiting or communicating with A.G.T. The court stated it was another basis to find that R.P.T. had forfeited his right to consent to the adoption.
Finally, the court concluded the adoption is in the best interest of the child. The court determined that S.L.S. and J.L.S. have provided a safe and stable home for A.G.T., and that J.L.S. wants only the best for the child, and loves her as his own daughter. The child's situation with them presents no concerns as to her safety or well-being. The court also reviewed the "volatile history and legal battle" between S.L.S. and R.P.T., to determine whether the relationship between A.G.T. and her legal father, R.P.T., should be severed forever out of concern for her best interests.
The court noted that in 1997 R.P.T.'s visitation with A.G.T. had been modified to require that all of his visits be supervised, and he was stripped of all overnight visitation. On April 7, 2005 the parties stipulated to a consent judgment on the record, which terminated overnight visitation and limited day visits to every other Sunday. However, R.P.T. refused to sign the consent judgment, despite having stipulated to its terms.
The court also referred to testimony by S.L.S. and R.P.T. regarding R.P.T.'s unauthorized entry into the home of S.L.S. several years ago while the family was out of town. R.P.T. was found civilly liable on July 13, 1999 for breaking into and entering their house, vandalizing A.G.T.'s bedroom, and burglarizing the home. The court stated, "This event is a clear indication into [R.P.T.]'s character and extremely poor judgment."
The court also noted there were verbal altercations between S.L.S. and R.P.T., and between R.P.T. and J.L.S., and that "[R.P.T.]'s actions as a parent were inappropriate." The court took notice of two custody evaluations performed by Dr. Karen Van Beyer, who recommended that sole custody remain with S.L.S. In particular, the court noted a comment that R.P.T. told the court-appointed visitation supervisor *647 that he would rather remain in conflict with S.L.S. than co-parent, because the conflict made him feel better. Further, despite R.P.T.'s completing recommended parenting classes, in a re-evaluation on March 15, 2004 Dr. Van Beyer again gave poor marks to R.P.T.'s parenting skills.
The court concluded,
[R.P.T.] has consistently shown that he prefers conflict and drama over the best interests of his daughter. . . . The testimony presented by [J.L.S.] paints a picture of a large, extended and loving family that provides A.G.T. with security and love. In contrast, her relationship with her father has been fraught with turmoil, conflict with her mother, and dysfunction, at best. Given her age and level of maturity, this Court gives credence and weight to the wishes of A.G.T. in rendering this decision.
The decision to terminate a parent's rights to a child is always a difficult choice for the Court. [R.P.T.] shows no change of heart towards his past behavior, nor does he take any responsibility for the conflicted relationship with his daughter. He makes no apologies, nor does he recognize any wrongdoing. Considering all of the testimony and evidence submitted, the demeanor and credibility of the witnesses, this Court finds [R.P.T.] failed to rebut the presumption in favor of A.G.T.'s adoption by [J.L.S.].
ASSIGNMENTS OF ERROR
On appeal, R.P.T. asserts the juvenile court erred in failing to apply Executive Orders No. KBB 2005-32, 2005-48 and 2005-67 to this case; in failing to apply the doctrine of lis pendens and res judicata to the adoption proceeding; in finding that R.P.T. failed to communicate or attempt to communicate with the child after Hurricane Katrina; in finding that R.P.T. did not pay child support for six months as a basis for terminating his parental rights; and in finding that the adoption was in the best interests of the child. He also contends that his rule for visitation filed in December 2005 interrupted the six-month peremptive period of La.Ch.C. art. 1245.
LAW AND ANALYSIS
Among the types of adoptions authorized by the Louisiana Children's Code is intrafamily adoption, which refers to adoption by a stepparent or certain other relatives of the child. La.Ch.C. arts. 1170, 1243. Unless parental rights have been terminated in accordance with law, consent to the adoption of a child or relinquishment of parental rights shall be required of the father of the child if the child was born of the marriage. La.Ch.C. art. 1193(2)(a).
The consent of the parent required by Article 1193 may be dispensed with, upon proof that the spouse of a stepparent petitioner has been granted sole or joint custody of the child and the other parent has refused or failed to comply with a court order of support without just cause for a period of at least six months, or the other parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months. La.Ch.C. art. 1245(C)(1)-(2).
The court is to hear and take into consideration information from all sources concerning the intrafamily adoption, and the basic consideration shall be the best interests of the child. La.Ch.C. art. 1255(A). When the court has granted custody to the child's parent married to the stepparent petitioner, there shall be a rebuttable presumption that this adoption is in the best interests of the child. La.Ch.C. art. 1255(B).
*648 "The petitioner bears the burden of establishing each element of a ground for termination of parental rights by clear and convincing evidence." La.Ch.C. art. 1035(A). "To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable; that is, much more probable than its nonexistence." In re Bourgeois, 04-1466, pp. 6-7 (La.App. 5 Cir. 4/26/05), 902 So.2d 1104, 1108.
"When factual findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard of review demands great deference to the trier of fact's findings, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." In re Bourgeois, 04-1466, p. 7, 902 So.2d at 1108.
The party petitioning the court for adoption carries the burden of proving a parent's consent is not required under the law. However, even upon finding that a parent has lost his right to consent to the adoption, the adoption should only be granted when it is also found to be in the best interest of the child. The trial judge is vested with great discretion in determining whether an adoption is in the best interest of the child and each case must be decided on its own facts. The trial court's discretion is not absolute and a determination of best interest is subject to reversal if the record reveals manifest error in the determination. [Citations omitted.]
In re Orgeron, 94-458, pp. 4-5 (La.App. 5 Cir. 11/16/94), 646 So.2d 1137, 1139.
Here, the juvenile court determined that R.P.T. had failed to comply with a court order of support for more than six months without just cause, and also had failed to visit, communicate, or attempt to communicate with A.G.T. for at least six months without just cause. "[R]easonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review." Parish Nat. Bank v. Ott, XXXX-XXXX (La.2/25/03), 841 So.2d 749, 753. In this case, the juvenile court's factual findings were reasonable and were based on reasonable credibility determinations. Nor were the findings clearly wrong. Hence, we cannot reverse the judgment.
The juvenile court did not believe R.P.T.'s testimony that he sent checks to S.L.S. beginning in February 2006. The court determined that R.P.T. failed to make his child support payments under the October 11, 2001 judgment, which were due on September 1, October 1, November 1, and December 1, 2005, as well as January 1, February 1, March 1 and April 1, 2006. Thus, by the time the petition for intrafamily adoption was filed on April 13, 2006, R.P.T. was eight months in arrears on child support. The court further found the evidence and testimony showed R.P.T. had ample resources and opportunity to locate S.L.S. and A.G.T. in order to pay child support and visit with A.G.T.
Based on the record, we find no manifest error in those determinations. The court did not err in determining that R.P.T. forfeited his right to object to the adoption of A.G.T. by her stepfather, J.L.S. Further, the evidence was clear and convincing that the adoption is in the best interests of A.G.T., and R.P.T. failed to rebut the presumption that the step-parent adoption is in the child's best interests.
We also agree with the court's determination that R.P.T.'s filing of a rule for visitation in the district court in December 2005 did not interrupt the six-month time period under La.Ch.C. art. 1245. As the court found, R.P.T. had resources and opportunity *649 to discover that his daughter and her mother had returned to and were living in their home in Metairie. Thus, he could have both paid child support and contacted/visited his daughter, but he did not do so, and he did not establish just cause for his failures.
R.P.T. contends the trial court erred in failing to apply Executive Order Nos. KBB 2005-32, 2005-48 and 2005-67, issued by the Governor of Louisiana following Hurricane Katrina. Executive Order KBB 2005-32 provided that "all deadlines in legal proceedings, including liberative prescriptive and preemptive periods in all courts, . . . are hereby suspended until at least September 25, 2005." Executive Order KBB 2005-48 extended that time period until October 25, 2005 in all parishes except Calcasieu, Cameron, Jefferson Davis and Vermillion.[6]
R.P.T. argues the executive orders extended the six-month deadline imposed by La.Ch.C. art. 1245. In effect, that would mean he had an extra two months within which he could refuse or fail to pay support and/or communicate, visit or attempt to communicate or visit with his child before losing his right to object to the intrafamily adoption.
We find no merit to this assignment of error. It is an argument that was not made to the trial court and, thus, under the Uniform Rules, Louisiana Courts of Appeal, Rule 1-3, we cannot consider it.
Even addressing the issue in an abundance of caution, we conclude there can be no suspension of the natural father's obligation to support his child. La.R.S. 9:5821 to 9:5825 were passed by the state legislature to ratify the governor's executive orders regarding prescription and peremption of rights. They specifically extended the period for timely filing of documents and pleadings required by law. However, there is nothing to indicate the orders or statutes excused an obligation to pay support.
R.P.T. was able to use the district court to file a rule to increase his visitation in December 2005 and January 2006, and also to serve S.L.S. with the rule, but he did not avail himself of such legal recourse to ensure he would not be remiss with regard to his child support obligation. As argued by J.L.S. in his brief as appellee, it was R.P.T.'s obligation to pay child support and it was S.L.S.'s right to receive that child support.
R.P.T. also assigns as error the juvenile court's failure to apply lis pendens and res judicata to the adoption proceedings. We find no merit to that assignment. The adoption proceeding in juvenile court was separate and apart from any custody/visitation/child support proceeding in the district court. Under La.C.C.P. art. 531, the doctrine of lis pendens applies only where the second pending suit is on the same transaction or occurrence, between the same parties in the same capacities. The petitioner in the adoption proceeding is J.L.S., who is not a party to the district court proceedings, so there is no identity of parties. Further, the cause of action in the adoption proceeding is not the same as the causes of action in any custody/visitation/support proceeding. Thus, exceptions of lis pendens and res judicata cannot apply.
Considering the record in its entirety, therefore, we find no merit to the defenses asserted by R.P.T., and we find no manifest error in the juvenile court's determination *650 that R.P.T. forfeited his right to object to the adoption of his daughter by her stepfather and that the adoption is in the best interests of the child. Accordingly, the judgment is affirmed. Costs of this appeal are assessed against the appellant, R.P.T.
AFFIRMED.
NOTES
[1] La.Ch.C. art. 336 provides:

A. Except as provided by Paragraphs B and C of this Article, the effect of a judgment shall not be suspended by an appeal, unless the trial court or a court of appeal directs otherwise.
B. A parent shall have the right to appeal suspensively from any ruling terminating his parental rights, including a judgment of adoption, notwithstanding the power of the court to order the commencement or continuation of temporary custody of the child with persons other than the parents.
C. A suspensive appeal shall not suspend the execution of the judgment insofar as the judgment relates to custody or child support.
[2] We use initials in order to maintain confidentiality pursuant to La.Ch.C. art. 412.
[3] See State of Louisiana Executive Orders No. KBB 2005-32, KBB 2005-48, and KBB 2005-67; La.R.S. 9:5821, et seq.; State v. All Property and Cas. Ins. Carriers Authorized and Licensed To Do Business In State, 2006-2030, p. 2 (La.8/25/06), 937 So.2d 313, 316; Kimbrough v. Cooper, 2005-2335 (La.11/22/05), 915 So.2d 344.
[4] "If the child to be adopted is twelve years of age or older, the court shall solicit and consider his wishes in the matter." La.Ch.C. art. 1253(C).
[5] In other words, the intrafamily adoption did not require R.P.T.'s consent.
[6] Executive Order KBB 2005-67 extended the legal deadlines in those four parishes until November 25, 2005.