CLARENCE E. McMANUS, Judge.
 

 |2The defendant, Larry R. Falkins, was convicted of attempted first degree murder of a police officer in violation of LSA-R.S. 14:27(30), and was sentenced to hard labor for a term of forty years, to be served without the benefit of parole, probation, or suspension of sentence. Thereafter, defendant filed a motion to reconsider sentence, which was denied by the trial court. Defendant now appeals. We affirm defendant’s conviction and sentence.
 

 The following was adduced at trial. On September 1, 2005, in the immediate aftermath of Hurricane Katrina
 
 [1]
 
 , members of the Jefferson Parish Sheriffs Office responded to reports of looting. Deputy Stanley Brown, assisted by Deputy Andi-no, arrived at the Dollar Store on Airline Highway, Metairie, Louisiana, where they found large numbers of people inside the store. A female on the scene informed officers that guns were being stolen from the Cash America Pawn Shop next door.
 

 In responding to this tip, the police found guns inside the doorway but no suspects inside. The police inventoried the guns and began to load them in police cars. Officers received a tip that the people who had broken into Cash America and stolen guns had left in a maroon Chevy, which was parked on Simon Street with a flat tire. The tipster also stated that one of the subjects, wearing jeans, a white shirt, and a black cap, was changing the tire. Deputy Brown drove to Simon |3Street where he saw the car and the suspect, whom he identified in court as the defendant.
 

 As the deputy pulled up behind, the defendant began to run toward the railroad tracks. Deputy Brown grabbed his shotgun for his safety and pursued the defendant down the tracks. Deputy Brown testified that, “Mr. Falkins turned with his head and his right hand and had a black in color pistol and pointed it in my direction.” Brown saw the muzzle flash from the defendant’s weapon and returned fire. Brown fired his shotgun at the defendant three times. On the third shot, the defendant fell. He popped up again, however, and ducked into the woods near the tracks.
 

 Deputy Abraham Andino also made a positive identification of the defendant as the shooter in court. He described the scene at the shopping center and the discovery of the cache of stolen guns. He was in pursuit when the defendant fired at police. After the second shot, he realized that the defendant was shooting at the officers. The defendant ran out of sight. When the defendant turned back and fired his pistol, he was 35 to 50 yards away from Officer Brown.
 

 Lieutenant Karl Walsdorf also described chasing the defendant on the railroad tracks. When the police got to the top of the tracks, the defendant turned and fired on the officers. When Walsdorf heard the first shot, he crouched down and heard the bullet whiz over his head. The defendant fired the first shots. There was no place
 
 *192
 
 to take cover and Walsdorf was afraid for his life. Walsdorf had no doubt that the man sitting in the courtroom was the same man who had shot at the officers.
 

 The officers who testified agreed that the defendant was not captured in the chase. After the defendant eluded police, a “perimeter” was set up with many |4units, including K-9s and helicopters, involved in searching for the defendant. The handgun was never recovered.
 

 Shortly after the exchange of gunfire and the chase down the tracks, the police received information that a black male had presented himself at the Kenner Regional Hospital with a gunshot wound. Roughly an hour after the shooting, Deputy Andino made a positive identification of the defendant as the shooter.
 

 Major Victor Amstutz testified that he learned that a subject had presented himself at Kenner Regional with a gunshot wound. Amstutz intexviewed the subject who stated that he had been walking on West Metairie near North Sibley when he was shot from a car. Amstutz also spoke with the two men who brought the subject to the hospital. These men contradicted the defendant’s story. The three officers who had been shot at, took a look at the subject and made positive identifications of him as the shooter. At Amstutz’ request, a Kenner policeman conducted a gunshot residue test.
 

 An Instant Shooter Identification Kit was performed on both of the defendant’s hands. His right hand tested positive for the presence of gunpowder residue, while his left hand did not. The test revealed a strong presumptive positive that the defendant’s right hand was “at or near a gunfire or gunpowder source.”
 

 The defendant exercised his right to testify at trial. He denied participating in the robbeiy of the pawn shop. He also denied driving a car, changing a tire, or shooting a gun. He testified that he began to run on the train ti’aeks but was not concerned until he heard an officer say that he had a gun. He denied having a gun, however, and denied firing at the police officers. He acknowledged that he was struck in the arm by shots from a police officer. The defendant stated that he ran into a person he knew whom he asked to take him to the hospital. He denied | ¿having told Major Amstutz that he was the victim of a drive-by shooting. He concluded that the police were making up the account of his statement.
 

 In his first allegation of error, defendant alleges that it was error for the trial court to deny the Motion to Reconsider Sentence as the sentence imposed was constitutionally excessive.
 

 Both the Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering.
 
 State v. Wickem,
 
 99-1261 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 968,
 
 writ denied,
 
 00-1371 (La.2/16/01), 785 So.2d 839. In reviewing a sentence for excessiveness, the reviewing court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice.
 
 State v. Lobato,
 
 603 So.2d 739, 751 (La. 1992).
 

 Three factors that are considered in reviewing a trial court’s sentencing discretion are the nature of the crime, the nature and background of the offender, and the sentence imposed for similar crimes by the same court and other courts.
 
 *193
 

 State v. Knightshed,
 
 00-1410 (La.App. 5 Cir. 3/28/01), 783 So.2d 501, 504-05.
 

 On appeal, the issue is whether the trial court abused its discretion, not whether another sentence might have been more appropriate.
 
 State v. Allen,
 
 03-1205 (La. App. 5 Cir. 2/23/04), 868 So.2d 877, 879-80.
 

 In this case, the crime charged is serious and the legislature has established a correspondingly serious penalty. Attempted first degree murder of a peace officer is punishable by imprisonment at hard labor for not less than twenty nor more than fifty years without benefit of probation, parole, or suspension of sentence. LSA-R.S. 14:27:30.
 

 | (iThe trial judge imposed a sentence of forty years at hard labor for the attempted murder of Deputy Brown. The sentence imposed is within statutory limits and, in fact, is ten years less than the maximum possible sentence provided by the legislature. The sentencing judge was aware of the facts of the crime, as she had presided over the trial. In order to become familiar with the defendant’s background, the trial judge ordered a pre-sentence investigation which she reviewed prior to imposing sentence. She further stated that she took the statutory guidelines of LSA-C.Cr.P. art. 894.1 into account.
 

 Defendant argues that he was only twenty-two years old, with a relatively minor prior criminal record, at the time of sentencing. A defendant’s youth, by itself, is an insufficient basis to depart from the sentencing scheme set by the legislature.
 
 State v. Robinson,
 
 07-832 (La.App. 5 Cir. 4/15/08), 984 So.2d 856, 868.
 

 In light of the gravity of the offense, we find that this sentence is neither illegal nor unconstitutionally excessive.
 
 [2]
 
 Accordingly, we find no merit to this allegation of error.
 

 The defendant also requests that we review the record for errors patent. The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir. 1990). The review reveals no errors patent in this case.
 

 For the above discussed reasons, we affirm the defendant’s conviction and sentence.
 

 AFFIRMED.
 

 [1]
 

 . This Court has specifically taken judicial notice that Hurricane Katrina hit south Louisiana on August 29, 2005.
 
 In re Intra Family Adoption of A.G.T.,
 
 06-805 (La.App. 5 Cir. 3/13/07), 956 So.2d 641.
 

 [2]
 

 . Compare
 
 State v. Williams,
 
 96-652 (La.App. 3 Cir. 2/5/97), 688 So.2d 1277, 1284 and
 
 State
 
 v.
 
 Allen,
 
 478 So.2d 589 (La.App. 2 Cir. 1985),
 
 sentence affirmed as amended to delete firearm enhancement,
 
 496 So.2d 301 (La. 1986).