MARION F. EDWARDS, Judge.
 

 This is an appeal from a judgment of the Jefferson Parish Juvenile Court (“Juvenile Court”) granting a petition for intra-family adoption. For reasons that follow, we affirm the judgment.
 

 L.C.
 
 [1]
 
 was born on October 10, 2002 of the marriage between W.S. and P.C. On October 18, 2006, W.S. obtained a judgment of divorce based on La. C.C. art. 103 in the Twenty-Fourth Judicial District Court. In that same proceeding, on December 21, 2006, the parties were granted joint custody of L.C., with W.S. as the domiciliary parent. Visitation rights were granted to P.C. On December 11, 2008, P.C. filed a motion to amend that judgment to one of shared custody as defined by La. R.S. 9:315.9(A)(1).
 
 [2]
 
 On January 17,
 
 *645
 
 2009, W.S. married L.S., with whom she and the child had been living since November 2006. On February 6, 2009, W.S. and L.S. filed a petition for intrafamily adoption in the Juvenile Court seeking to terminate the parental rights of the natural father, P.C., and declaring the |schild to be the child of L.S. P.C. did not file an opposition to that petition. However, he did appear at the hearing on the adoption.
 

 At the trial of the merits on May 11, 2009, P.C. admitted that he has had no visits with the child between March 27, 2008 and January 11, 2009. Further, he admitted that he has paid no support for the child between March 12, 2008 and April 18, 2009. He admitted that, on April 13, 2009, there was an attachment out on him for failure to pay child support as ordered by the district court in the divorce proceeding. In response to the attachment he made a payment, but he has paid no child support since that April 18 payment. P.C. did not know where his child attended school, the name of his teacher, or of his pediatrician. P.C. admitted he has never been to his child’s school or taken the child to the doctor.
 

 P.C. testified that he has attempted to telephone his ex-wife, but she refuses to speak to him. P.C. also testified that, on December 11, 2008, he filed a motion to amend the joint custody plan put into place after the divorce in the district court. He did not offer any evidence that the motion was heard or acted upon by the district court. However, at the hearing, P.C. introduced recommendations made by a hearing officer in the divorce proceeding in the district court dated March 25, 2009 that set up visitation.
 

 P.C. confirmed that he has never sent correspondence to his son. However, he testified that he has given his son a gift every time he saw him and that the last gift he gave his son was on January 11, 2009. P.C. also testified that, once in 2008, he had tickets for the monster truck show and called W.S. to confirm that he could pick up L.C. and take him to the show. However, when the date for the event came, W.S. informed P.C. that L.S. was taking L.C. to the show.
 

 P.C. testified that he was unable to pay child support, despite the court order to do so because he had orthoscopic surgery and was unable to work for three | ¿months. He also testified that he was unemployed between June 2008 and January 2009. However, he conceded that he did not ask the court to reduce or discontinue the support obligation.
 

 W.S. testified that L.C. was born on October 10, 2002, and that she separated from P.C. in September 2005. She filed for divorce in August 2006. W.S. testified that, during the period between separation and the filing of the petition for divorce, P.C. visited his son once or twice a week. However, once the divorce petition was filed, the visitations tapered off drastically to about one or two days
 
 si
 
 month. W.S. confirmed P.C.’s testimony that he did not visit at all between June 2008 and January 2009. She further testified that P.C. did not call during that period to speak to the child or ask for visitation. She denied P.C.’s claim that she refused to speak to him and testified that she has never denied visitation requests. W.S. testified that an Easter visit was set up for 2009, but P.C. did not show up or call. W.S. stated that her son told family members in January 2009 that he no longer wanted to visit with his father, P.C. W.S. testified that P.C. has had only two visits with L.C. in 2009, one on January 11 and one on the weekend of March 27 through March 30. P.C. has not
 
 *646
 
 called since then.
 
 [3]
 

 In her testimony, W.S. discussed the relationship between her son and her current husband. She stated that they have been living together since the fall of 2006 and that they have bonded as father and son. W.S. also testified that the two go fishing, hunting, and camping together.
 

 L.S. testified at the hearing. He stated that he has been living with W.S. and L.C. since November 2006 and was married to W.S. on January 17, 2009. He said that he has been to L.C.’s school, taken him to the doctor and the dentist, and takes him on outings. L.S. testified that he loves L.C. and wants to adopt him. L.C. |already calls him “Dad.” L.S. corroborated the testimony of W.S. regarding P.C.’s lack of visitation and contact with L.C.
 

 At the end of the hearing on the matter, the Juvenile Court found that P.C.’s consent was not necessary and terminated his parental rights. The judgment also granted the intrafamily adoption. It is from that judgment that P.C. now appeals.
 

 LAW AND ANALYSIS
 

 In brief to this Court, P.C. does not contest the facts upon which the judgment at issue is based. He.concedes he did not visit or correspond with his son for a period of six months. He further concedes he did not pay child support for that period as ordered by the court. However, in four assignments of error, P.C. argues: (1) the adoption was not in the best interests of the child; (2) the Juvenile Court erred by failing to appoint separate legal counsel for the minor child as mandated by La. Ch.C. art. 1245.1; (3) he was denied his right to confrontation of witnesses because the court considered a confidential report of the Office of Community Services without testimony from any individual involved in the preparation of the report; and (4) the judgment of intrafamily adoption was erroneously entered because of stipulations and recommendations made by the hearing officer in the divorce proceeding two months before the intrafamily adoption matter was heard by the Juvenile Court.
 

 Intrafamily adoptions are authorized by La. Ch.C. arts. 1170 and 1243 when the adoption petition is filed by the stepparent and spouse of a custodial parent of the child. As a general rule, the consent of the biological father is required for an intrafamily adoption by the stepfather.
 
 [4]
 
 However, under certain circumstances, such consent may not be required. La. Ch.C. art. 1245 provides, in pertinent part, that:
 

 A. The consent of the parent as required by Article 1193 may be dispensed with upon proof of the required elements of either Paragraph B, or C of this Article.
 

 [[Image here]]
 

 C. When the spouse of a stepparent petitioner has been granted sole or joint custody of the child by a court of competent jurisdiction or is otherwise exercising lawful custody of the child and any one of the following conditions exists:
 

 (1) The other parent has refused or failed to comply with a court order of support without just cause for a period of at least six months.
 

 (2) The other parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of at least six months.
 

 It is clear from the record before us that the conditions of the above-cited article have been met. As previously stat
 
 *647
 
 ed, P.C. does not contest this. He argues that the adoption is not in the best interest of the child.
 

 Even upon a finding that a parent has lost his right to consent to the adoption, the adoption should only be granted when it is also found to be in the best interest of the child.
 
 [5]
 
 The determination of whether an adoption is in the best interest of the child must be decided in each case on its own facts and is subject to the vast discretion of the trial judge. While we recognize this discretion is not absolute, upon review, a determination of the best interest is subject to reversal only if the record reveals manifest error.
 
 [6]
 

 In his discussion regarding the best interest of the child, P.C. incorporates his argument that the trial court erred in relying on a confidential report from the Office of Community Service contained in the record. P.C. asserts that neither he nor his counsel knew of the report before the hearing on the intrafamily adoption hearing.
 

 The record shows that, on February 19, 2009, the Juvenile Court issued an order setting the date for the hearing on the adoption petition. It was also ordered that a copy of the petition and all exhibits be served on P.C. Also contained in that order, is a directive to the Department of Social Services to perform a confidential study for the proposed adoption. The order shows that service was requested on P.C. P.C. does not contend that service of that order was not made. The confidential report was completed as ordered and filed in the record on April 6, 2009. Consideration of a confidential report by the Department of Social Services in an intrafamily adoption is customary in the Juvenile Court.
 
 [7]
 

 There is no evidence in the record that P.C. did not receive the requested service of the directive to perform the report, that he attempted to obtain a copy of the report, or that he objected to the court’s consideration of the report at the hearing or subpoenaed any authors of the report. Further, while P.C. points to minor discrepancies in the report, there is nothing in his argument, or in the report, to show that the adoption is not in the best interest of the child. Accordingly, we find no merit in this argument. Given the record before us, we do not find manifest error in the Juvenile Court’s determination that the adoption was in the best interests of the child.
 

 P.C. argues that the trial court violated the provisions of La. Ch.C. art. 1245.1
 
 [8]
 
 by failing to appoint an attorney for the child.
 
 *648
 
 We disagree. Under the clear provisions of Article 1245.1, P.C. was required to notify the court of his | ^opposition to the adoption. The record reveals that P.C. neither filed a formal opposition nor expressed an opposition in his testimony. Although he did testify at the hearing on the adoption, his testimonial evidence was limited to confirming the facts that he did not visit his son or pay court-ordered child support for a period in excess of six months. The remainder of his testimony was an attempt to show that the failure to pay child support or visit his son was justified or beyond his control. Therefore, we find no merit in this argument.
 

 P.C. also argues that the custody orders and recommendations by the hearing officer in the divorce action provide a basis for
 
 res judicata
 
 as to this action for intrafamily adoption in the Juvenile Court. In the alternative, P.C. argues the intra-family adoption action is barred by the doctrine of judicial estoppel.
 

 Res judicata
 
 is raised by peremptory exception and must be specially pleaded.
 
 [9]
 
 It may be pleaded at any stage of the proceeding in the trial court prior to a submission of the case for a decision.
 
 [10]
 
 There is nothing in the record to indicate that an exception of
 
 res judicata
 
 was filed in the Juvenile Court at any stage of this proceeding. Thus, the issue cannot be considered in this opinion.
 

 P.C. urges this Court to apply the doctrine of judicial estoppel to vacate the adoption judgment. Judicial estoppel is an equitable doctrine designed to protect the | integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.
 
 [11]
 
 As with
 
 res judicata,
 
 judicial estoppel must be raised in the trial court.
 
 [12]
 
 P.C. did not raise the defense of judicial estoppel in the Juvenile Court. Therefore, the merits of this argument will not be considered on appeal.
 

 For the foregoing reasons, we affirm the judgment on appeal.
 

 AFFIRMED.
 

 [1]
 

 . The initials of the all of the parties will be used to protect the identity of the minor child in accordance with Uniform Rules, Courts of Appeal, Rule 5-2
 

 [2]
 

 . “Shared custody” means a joint custody order in which each parent has physical custody of the child for an approximate equal amount of time. There is no assertion by P.C. that the district court ever considered or acted upon that motion.
 

 [3]
 

 . The date of the hearing was May 11, 2009.
 

 [4]
 

 . La. Ch.C. art. 1193.
 

 [5]
 

 .
 
 In re V.A.H.,
 
 07-472 (La.App. 5 Cir. 12/27/07), 972 So.2d 479,
 
 reh’g denied,
 
 (La. App. 5 Cir. 1/28/08).
 

 [6]
 

 .
 
 In re B.E.S.,
 
 08-777 (La.App. 5 Cir. 5/6/09), 15 So.3d 133.
 

 [7]
 

 . La. Ch.C. art. 1253.
 

 [8]
 

 . A. If the adoption petition seeks to terminate parental rights of a parent whose consent to the adoption is required pursuant to Article 1193 and the parent notifies the court of his intent to oppose the adoption, the child and the parent shall each have the right to be represented by separate counsel in the adoption proceeding.
 

 B. Upon receipt of a notice of opposition, the court shall appoint a qualified, independent attorney to represent the child in such a proceeding. Neither the child nor anyone purporting to act on his behalf may be permitted to waive the child’s right to counsel. The costs of the child’s representation shall be taxed as costs of court.
 

 C. If the court determines that the parent is indigent and unable to employ counsel solely for that reason, an attorney shall be appointed to represent the parent in accordance with Article 20. The costs of the indigent parent's representation may be taxed as court costs.
 

 [9]
 

 . La. C.C.P. art. 927(B).
 

 [10]
 

 . La. C.C.P. art. 928(B).
 

 [11]
 

 .
 
 Miller v. Conagra, Inc.,
 
 08-0021 (La.9/8/08), 991 So.2d 445.
 

 [12]
 

 . Id.