MARC E. JOHNSON, Judge.
12Defendant/Appellant, R.F.,[1] seeks review of the granting of an intrafamily adoption from the Juvenile Court, Parish of Jefferson, Division “B”. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
R.F. gave birth to B.C.F. on July 3, 2010. R.F. was unmarried at the time of B.C.F.’s birth. Two months after the *511 birth of B.C.F., the paternity of her biological father, D.G., was confirmed by DNA testing. Thereafter, D.G. and R.F. developed a visitation agreement. D.G. was allowed supervised visitation; however, visitation and custody between D.G. and R.F. became contentious. The presence of a police officer was needed during the custody exchanges to maintain the peace between the parties.
On December 13, 2010, the 24th Judicial District Court confirmed D.G.’s paternity and awarded him sole provisional custody of B.C.F. R.F. was only allowed visitation at D.G.’s discretion. R.F. filed a Motion to Reconsider the custody judgment. In a consent judgment signed on January 10, 2011, D.G. and |SR.F. agreed to joint, shared custody of B.C.F. with alternating physical custody schedules. D.G. and R.F. were ordered to exchange information regarding B.C.F. in writing, specifically by email, except in emergency circumstances when they were able to communicate by telephone. R.F. was ordered to attend therapy.
D.G. filed a Rule for Contempt and a Rule to Modify Custody. A rule to show cause hearing was held on October 20, 2011. In a ruling rendered on October 21, 2011, the custody order was modified to include, among other things, that R.F. submit to random drug and/or alcohol testing. Dr. Daphne Glindmeyer was appointed as the court’s expert to conduct a custody evaluation. Additionally, it was ordered that only the biological father and biological mother could be referred to as “daddy” or “mommy,” respectively.
On November 21, 2011, D.G. filed an Ex Parte Emergency Sole Custody Motion and Motion to Modify Custody. The motions alleged R.F. was abusing alcohol and drugs and she had attempted suicide. The motions also alleged that on November 18, 2011, R.F. demanded that a police report be written to state that she was being denied visitation with B.C.F.; however, after speaking with the police officer, she realized she had the wrong visitation day. Later that day, it was alleged that R.F. was arrested for D.W.I. The matters were heard on December 14, 2011. The emergency motion was continued. In a judgment rendered on the same date, D.G. was awarded sole custody of B.C.F., pending the receipt of the court-appointed evaluator’s report and final adjudication of custody. R.F. was awarded supervised visitation at Harmony House on Wednesdays and Sundays. All of the other provisions of the October 21st judgment remained in force. A few months after D.G. was awarded sole custody, D.G. married T.G. on April 21, 2012.
On December 13, 2012, the emergency motion filed by D.G. was heard. In a consent judgment rendered on March 5, 2013, D.G. was awarded sole, domiciliary |4custody of B.C.F. R.F. was allowed regular, supervised visitation for two hours per week. R.F. was ordered to be evaluated for both inpatient and outpatient alcohol and substance abuse treatment and to attend a program specializing in the treatment of addictive disorders and comorbid psychiatric conditions. R.F. was also ordered to show evidence of continued sobriety, abstinence of narcotics, and ongoing substance abuse treatment for a period of 90 days before she would be allowed to participate in weekly visitations with B.C.F.
On September 17, 2013, T.G. filed a Petition for Intrafamily Adoption, seeking to adopt B.C.F. with the consent of D.G. The petition alleged R.F. failed to visit, communicate, or attempt to communicate with B.C.F. without just cause for a period of at least six months. The petition also alleged that the last time R.F. requested visitation with B.C.F. was on March 14, 2013, de *512 spite the fact that she had not complied or demonstrated any of the requirements, in particular the 90 days of sobriety and treatment requirement, of the March 5, 2013 judgment that would entitled her to recommence visitation. R.F. filed an Answer on October 2, 2018, denying all of the allegations set forth in the petition.
The hearing on the petition and opposition was held on November 12, 2013. At the conclusion of the hearing, the trial court granted the adoption, found the consent of R.F. to be unnecessary, and made a specific finding that the adoption by T.G. was in the best interest of the child. In a written judgment rendered on November 12, 2013, the trial court declared, for all legal purposes, B.C.F. to be the child of D.G. and T.G., ordered that B.C.F.’s named be changed to B.M.G., and order the clerk of court to comply with the requirements of La. Ch.C. art. 1182(B). The instant appeal followed that judgment.
I ^ASSIGNMENTS OF ERROR
On appeal, R.F. alleges the trial court erred in finding 1) she did not attempt to contact B.C.F. at least once during a six-month period without just cause under the provisions of La. Ch.C. art. 1245, and 2) the adoption of B.C.F. was in the child’s best interest.
LAW AND ANALYSIS

Lack of Contact

R.F. alleges the trial court erred in finding she did not attempt to contact B.C.F. at least once during a six-month period without just cause under the provisions of La. Ch.C. art. 1245. R.F. also alleges the trial court applied the La. Ch.C. art. 1245 too technically. R.F. argues that she attempted to contact B.C.F. by phone while receiving treatment, she attempted to contact B.C.F. on different occasions outside of her substance abuse treatment, and there were regular visits with B.C.F. through her family members during her treatment. R.F. avers that she simply does not meet the traditional criteria as someone uninterested in her child. R.F. contends that her past substance abuse problems should not be held against her as a reason to go forward with an adoption of B.C.F. to which she objects.
T.G. argues the trial court was correct in its finding that R.F. had not attempted to contact B.C.F. for a period of, at least, six months. T.G. avers that R.F. had not visited B.C.F. for more than a year at the time of the hearing. T.G. further avers that R.F. made no requests for visitation during the six-month period from March 14, 2013 until the filing of the Petition for Adoption on September 17, 2013; and, R.F. failed to attempt contact with B.C.F., even after she had become 90 days sober during that time frame.
Unless the parental rights have been terminated in accordance with law, consent to an adoption of a child or relinquishment of parental rights shall be | (¡required of the mother of the child. La. Ch.C. art. 1193(1). The required consent of a parent to an intrafamily adoption may be dispensed with upon proof by clear and convincing evidence of certain required elements at the hearing on the petition for and opposition to the adoption. La. Ch.C. art. 1245(A). When the spouse of a stepparent petitioner has been granted sole or joint custody of the child by a court of competent jurisdiction and the other parent has refused or failed to visit, communicate, or attempt to communicate with the child with the child without just cause for a period of at least six months, the consent of the other parent may be dispensed of in an intrafamily adoption. La. Ch.C. art. 1245(C)(2). To find “just cause,” a parent’s failure to visit or communicate with *513 his/her child must be due to factors beyond his/her control. In re Morris, 39,523 (La.App. 2 Cir. 1/26/05); 892 So.2d 739, 743.
“The petitioner bears the burden of establishing each element of a ground for termination of parental rights by clear and convincing evidence.” La. Ch.C. art. 1035(A). “To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable; that is much more probable than its nonexistence.” In re Intra Family Adoption of A.G.T., 06-805 (La.App. 5 Cir. 3/13/07); 956 So.2d 641, 648, writ denied, 07-0783 (La.5/4/07); 956 So.2d 611, citing In re Bourgeois, 04-1466 (La.App. 5 Cir. 4/26/05); 902 So.2d 1104, 1108. The court is to hear and take into consideration information from all sources concerning the intrafamily adoption. In re C.E.M., III, 09-787 (La.App. 5 Cir. 1/26/10); 31 So.3d 1138, 1143-44. When factual findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard of review demands great deference to the trier of fact’s findings, because only the trier of fact can be aware of the variations in demeanor 17and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. In re Intra Family Adoption of A.G.T., supra.
At the hearing in the instant matter, D.G. testified that R.F. appeared to be under the influence during the custody exchanges because she was irate in some ways and was slurring her words. D.G. stated R.F. had missed visits on appointed days at the designated location, Harmony House, and had the police attempt to enforce a visitation on the wrong day. D.G. explained that R.F.’s attorney would email requests to meet at Harmony House, but there would be no appointment reserved for the visitation. After R.F.’s attorney sent an email notifying his attorney that R.F. was cancelling the scheduled visitations at Harmony House until further notice, he did not receive any further notice that R.F. had re-enrolled for visitation services at Harmony House. He testified that the last time R.F. requested to see or have contact with B.C.F. was on March 13 or 14, 2013. D.G. acknowledged that his attorney asked him to bring B.C.F. to Grace House, R.F.’s drug rehabilitation center, for a supervised visit in March 2013, but he declined to do so because it was not in conformity with R.F.’s 90-day sobriety and treatment requirement of the March 5, 2013 judgment. D.G. further testified that B.C.F. was in a final, stable home with him and T.G. as a family, and they provided everything for B.C.F. D.G. stated that he would like for B.C.F. to know her biological mother and grandparents and would encourage a relationship between them, in the event the adoption would be granted.
T.G. testified that she did everything for B.C.F. that a mother would do, e.g., bathe her, feed her, brush her teeth, and take her to school and to the doctor. T.G. stated that she became a stay-at-home mom for her son and B.C.F. after D.G. was awarded sole custody of B.C.F. T.G. said B.C.F. started to call her “mommy” on her own and without any influence from either T.G. or D.G. T.G. testified that RB.C.F. was being raised in a stable home. T.G. stated R.F. requested visitation with B.C.F. on March 14, 2013 but did not request visitation again until after the Petition for Intrafamily Adoption had been filed. T.G. averred B.C.F. had not spent a night with R.F. since October 2011. T.G. attested that she would definitely preserve the relationship between B.C.F. and R.F.
R.F. testified that she enrolled herself in a drug rehabilitation program and was admitted to the Grace House on October 5, *514 2012. She relapsed in December 2012 and January 2013. R.F. stated that she re-enrolled in Grace House and had been sober since February 18, 2013. R.F. explained that she did not complete the last phase of her treatment at Grace House, which was against medical advice, because she decided to obtain her own housing versus going to one of the transitional houses offered. R.F. testified as to the successful progress of her sobriety through enrollment in substance abuse programs and appointments with psychiatrists.
R.F. asserted that she did not have direct contact with B.C.F. from October 2012 through the time of the hearing because the judgment did not allow her to call, email, or have any other contact with T.G., D.G., B.C.F., or anyone else in their family. R.F. admitted she was arrested for DWI and child desertion in November 2012, but the child desertion charge was dismissed. R.F. stated that as part of her recovery, she accepted responsibility for her past mistakes and was working to do “the next right thing” to rebuild the broken relationships in her life. R.F. expressed her wishes to positively contribute to B.C.F.’s life. In addition to her testimony, R.F. presented the testimonies of L.W., a program counselor, and K.K., her sponsor, to attest to her successful sobriety.
In the Reasons for Judgment, the trial court found that B.C.F. had not seen her natural mother in over a year, and R.F. failed to take the necessary steps to |3commence visitation with her daughter for over six months. The trial court reasoned that the March 5, 2013 consent judgment was clear that R.F. had to demonstrate continued sobriety for ninety (90) days before she would be allowed to commence visitation again with B.C.F., which was one of the terms put in place to protect B.C.F. The trial court stated that R.F. requested one visit on March 14, 2013, in violation of the consent judgment, and then did not request another visit until more than six months later. The trial court noted that no evidence was provided to show proof that R.F. requested to D.G. or T.G. to have any phone conversations with B.C.F. The trial court held that pursuant to La. Ch.C. art. 1245, R.F. failed to visit, communicate, or attempt to communicate with B.C.F. for six months without just cause.
After review of the evidence admitted, we find T.G. proved by clear and convincing evidence that R.F. refused or failed to visit, communicate, or attempt to communicate with B.C.F. without just cause for a period of, at least, six months. Both T.G. and D.G. testified that the last time R.F. attempted to schedule visitation with B.C.F. was on or about March 14, 2013. The email exchanges between the parties’ attorneys show there was a request from R.F. to visit with B.C.F. at Grace House, but D.G. refused the visit because R.F. had not complied with the consent judgment. The next email from R.F. requesting visitation was not sent until September 26, 2013, after the petition had been filed. Although it was argued by R.F. that she requested phone communication with B.C.F., there was no evidence of that attempt presented to the trial court. R.F. failed to present evidence that her failure to communicate with B.C.F. was beyond her control.
Therefore, due to the clear and convincing evidence presented by T.G., we do not find the trial court erred in finding R.F. refused or failed to visit, 110communicate, or attempt to communicate with B.C.F. without just cause for a period of, at least, six months.

*515
Best Interest of Child

R.F. alleges the trial court erred in finding her consent was not required and the adoption of B.C.F. was in the child’s best interest. R.F. argues that the best interest of B.C.F. is to have her natural parent-child relationship intact. R.F. maintains that she wishes to have a relationship with B.C.F. in the future and severance of that relationship is not in B.C.F.’s best interest.
T.G. argues the trial court acted in the best interest of B.C.F. by granting the adoption, and its ruling is supported by ample evidence and testimony in the record. T.G. contends that R.F. had not had an overnight visit with B.C.F. since November 2011, when B.C.F. was only one year old, and had frequently missed exercised supervised visitation until she eventually terminated her weekly supervised visitation at Harmony House without any explanation. Since B.C.F. had lived with T.G. and D.G. for most of her life, T.G. further contends that she, as a stepmother, was the person to love, feed, clothe, play with and teach B.C.F. T.G. claims that B.C.F. has no recollection of any mother other than her; and by following social cues, B.C.F. started to call her “momma.” T.G. asserts that, under the facts of this case, it has been proven that 1) no natural parent-child relationship existed between R.F. and B.C.F., 2) R.F. was indifferent about B.C.F.’s well-being, and 3) R.F.’s visits with B.C.F. had been sporadic and inconsistent.
As mentioned earlier, T.G. proved by clear and convincing evidence that R.F. had no contact with B.C.F. for, at least, six months. Consequently, because the evidence presented showed that R.F. failed or refused to visit, communicate, or attempt to communicate with B.C.F. without just cause from March 14, 2013 to ^September 26, 2013, we find that R.F.’s consent to the intrafamily adoption was properly dispensed of by the trial court pursuant to La. Ch.C. art. 1245(C)(2).
Even upon a finding that a parent has lost his/her right to consent to the adoption, the adoption should only be granted when it is also found to be in the best interest of the child. In re Intrafamily Adoption of L.M.C., 09-885 (La.App. 5 Cir. 3/23/10); 39 So.3d 643, 647. The court is to hear and take into consideration information from all sources concerning the intrafamily adoption. In re C.E.M., III, supra. When the court has granted custody to the child’s parent married to the stepparent petitioner, there shall be a re-buttable presumption that the adoption is in the best interest of the child. La. Ch.C. art. 1225(B); In re Intra Family Adoption of A. G.T., 956 So.2d at 647. The determination of whether an adoption is in the best interest of the child must be decided in each case on its own facts and is subject to the vast discretion of the trial judge. In re Intrafamily Adoption of L.M.C., supra. The trial court’s discretion is not absolute, and a determination of best interest is subject to reversal if the record reveals manifest error in the determination. In re Intra Family Adoption of A.G.T., 956 So.2d at 648.
In the case at bar, the trial court in this matter found that it was clearly in the best interest of B.C.F. that T.G. adopt her. The trial court stated that B.C.F. was three years old, and she had not seen her mother in over a year or for a third of her life; therefore, the trial court could not say that B.C.F. would even recognize her biological mother. The trial court also noted that it was troubled by the fact that R.F. had not sought treatment for her borderline personality disorder, which was in violation of the March 5, 2013 consent judgment. The trial court cited the custody evaluator’s notes that “R.F.’s diagnosis of *516 borderline personality disorder appears to be the predominate mental health issue undermining her ability to maintain adequate stability in every day functioning,” and her “psychiatric and emotional | tissues appear to significantly limit her insight and judgment [and] as such, her parenting ability is significantly compromised by limited insight and judgment, as well as erratic, unstable and impulsive behavior.” The trial court found the testimonies of T.G. and D.G. to be of importance because they attested they would support and foster a relationship between R.F. and B.C.F. The trial court also found that T.G. had been a wonderful mother to B.C.F., and T.G. and D.G. had provided a loving, stable and nurturing home for B.C.F.
After review of the record, we find R.F. failed to rebut the presumption that the adoption by T.G. of B.C.F. was in B.C.F.’s best interests. The evidence presented to the trial court indicated T.G. had been a more prominent and positive parental figure in B.C.F.’s life than R.F. had been. Therefore, we cannot find the trial court was manifestly erroneous in its determination that the adoption was in the best interest of B.C.F., and subsequently, granting the intrafamily adoption.
DECREE
For the foregoing reasons, we affirm the intrafamily adoption of B.C.F.

AFFIRMED.

. In accordance with Uniform Rules — Courts of Appeal, Rules 5-1 and 5-2, we will use initials throughout the opinion to identify the parties to ensure the privacy of the minor child in this adoption case.