IN RE: NELITA THOMPSON APPLYING FOR
INTRAFAMILY ADOPTION, OF CHILDREN
UNDER THE AGE OF EIGHTEEN

NO. 24-CA-47

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE JEFFERSON PARISH JUVENILE COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 2022-AD-56, DIVISION "C"
HONORABLE BARRON C. BURMASTER, JUDGE PRESIDING

May 29, 2024

**MARC E. JOHNSON**
**JUDGE**

Panel composed of Judges Marc E. Johnson,
Stephen J. Windhorst, and Scott U. Schlegel

**AFFIRMED**
  **MEJ**
  **SJW**
  **SUS**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR DEFENDANT/APPELLANT,
GERALD CONAWAY
    Erin A. Fisher

COUNSEL FOR PLAINTIFF/APPELLEE,
NELITA THOMPSON
    Mitchell A. Palmer

**JOHNSON, J.**

Appellant, Gerald Conaway, Jr., appeals the intrafamily adoption of his minor children by their grandmother and temporary legal custodian, Nelita Thompson, which was rendered in the Juvenile Court of Jefferson Parish, Division "C". He also appeals the determination that his consent was not required for the intrafamily adoption. For the following reasons, we affirm the juvenile court's rulings.

## FACTS AND PROCEDURAL HISTORY

This is the second appeal involving the intrafamily adoption of N.E.C. and G.T.C., III[1] by Ms. Thompson. The underlying facts of this matter, as recited in *In re Thompson*, 23-320 (La. App. 5 Cir. 10/23/23), 375 So.3d 533, 534-35, are as follows:

> On September 1, 2022, Nelita Thompson filed a Petition for Intrafamily Adoption of the minor children, G.T.C.[,] III and N.E.C.[2] Her petition averred that she was the children's maternal grandmother and had been granted legal custody of the children by a judgment of the Juvenile Court signed on July 21, 2015, which was attached to the petition.[3] The petition alleged that Mr. Conaway had an extensive criminal record and that Ms. Thompson's daughter, Dillia N. Hackler, the children's mother, died in 2017. In her petition, Ms. Thompson alleged that it was in the best interest of the children that she be allowed to adopt them, as she had provided the primary care for them before and since the custody judgment, and continued to do so. She alleged that Mr. Conaway had either refused or failed to visit, communicate with, or attempt to communicate with the children for a period of at least six months. She further alleged that he failed to provide significant contributions to the children's care and support for a period in excess of six consecutive months. Among other exhibits, the children's birth certificates and the "Revocation of Custody" judgment in *State in the Interest of C.M., N.H., and G.C. III*, docket No. 2015-CC-62 in the Juvenile Court for the Parish of Jefferson, were attached to the Petition.
>
> On November 9, 2022, Mr. Conaway filed into the record of this proceeding a handwritten letter wherein he stated his opposition to the intrafamily adoption. He alleged that Ms. Thompson had lied to the court and concealed the exact whereabouts of the children from him,

---

[1] In accordance with Uniform Rules—Courts of Appeal, Rules 5-1 and 5-2, we will use initials throughout the opinion in reference to the minor children in this adoption case.

[2] N.E.C. was born in 2013, and G.T.C., III was born in 2015.

[3] The order of custody was granted in Docket No. 2015-CC-62, a child in need of care proceeding in Juvenile Court to which the parties refer in the appellate record and in briefs. The record of this child in need of care proceeding is not part of the appellate record in this proceeding.

and that they were currently with another relative, not Ms. Thompson, who had legal custody. He also alleged that he was not able to afford an attorney to represent him.

Counsel was appointed to represent the minor children. A hearing was held to determine whether due process required the appointment of counsel for Mr. Conaway. Following the hearing, counsel was appointed for Mr. Conaway on November 29, 2022.[4]

At the April 11, 2023 hearing on the opposition to the adoption and the final decree of the adoption, Mr. Conaway's opposition to the adoption was heard. At issue were the allegations in Ms. Thompson's petition that Mr. Conaway had failed to contact the children for a period in excess of six months and had also failed to provide significant support to the children for a period in excess of six months.[] Following testimony from Mr. Conaway, the trial court ruled from the bench that he had not borne his burden of proof that he had made the required communication with his children or provided the required support.[5] The [Juvenile Court] found that as a result, Mr. Conaway had lost the right to oppose the adoption; *i.e.*, his consent to the adoption was not required. Counsel for Mr. Conaway objected to the ruling.

The trial court did not proceed with the final decree of adoption at that time, however, finding that the record was missing a required affidavit. Mr. Conaway filed a Notice of Intent to File Appeal of the April 11, 2023 judgment on April 21, 2023, which was granted that same day. On May 22, 2023, the final decree on the petition for adoption was taken up; however, as evidenced by a minute entry in the appellate record, the final decree of adoption was continued pending the outcome of this appeal.

(Footnotes in original text and two footnotes added).

Upon appellate review, this Court found that, since the juvenile court specifically continued the final decree of adoption until such time as this Court ruled on the appeal, the April 11, 2023 judgment was not final for appellate purposes. Because this Court lacked appellate jurisdiction, the appeal was dismissed without prejudice. *Id*. at 537.

---

[4] The record indicates that the Petition for Adoption was set [for] hearing on December 19, 2022; however, a minute entry from that day states that the matter was continued to coincide with the hearing of the "opposition to adoption." A hearing on Mr. Conaway's opposition to the adoption and the final decree of adoption was held on January 30, 2023, but was continued to allow counsel for Mr. Conaway to review all discovery and the previous child in need of care proceeding, Docket No. 2015-CC-62. The next hearing was set for March 17, 2023. At that hearing, the court found that further discovery was necessary. The hearing on the opposition to the adoption and the final decree of the adoption was then reset for April 11, 2023.

[5] The juvenile court found that Mr. Conaway did not make any child support payments from December 2020 through November 2021, and that was a ground for the finding that he did not have the right to oppose the adoption. The court further found there was no just cause for Mr. Conaway to not contact the children while he was incarcerated from 2015-2017, and that lack of contact was a possible second ground for loss of Mr. Conaway's right to oppose the adoption.

On remand, the juvenile court held a subsequent hearing on the final decree on the petition for adoption on November 27, 2023. During the hearing, Ms. Thompson testified as to the current living, educational, and health statuses of N.E.C. and G.T.C., III. At the conclusion of the hearing, the juvenile court judge found that the intrafamily adoption of N.E.C. and G.T.C., III by Ms. Thompson was in the children's best interest. On the same date, the juvenile court rendered a final decree and judgment of adoption, determining N.E.C. and G.T.C., III to be the children of Ms. Thompson to the same extent as if the children were born unto her. Mr. Conaway's parental rights as the natural father of N.E.C. and G.T.C., III were terminated. The instant appeal followed.

## ASSIGNMENTS OF ERROR

On appeal, Mr. Conaway alleges that the trial court erred by: 1) finding that he did not have the right to oppose the petition for intrafamily adoption; 2) finding that he did not have to consent to the adoption based on the grounds of no contract or support for a period in excess of six months; 3) finding by clear and convincing evidence that he failed to support or visit his children for a period in excess of six months; 4) failing to hold the intrafamily adoption hearing within 90 days of the filing of the petition for intrafamily adoption, pursuant to La. Ch.C. art. 1253; and 5) granting Nelita Thompson's petition for intrafamily adoption of G.T.C., III and N.E.C.

## LAW AND ANALYSIS

Mr. Conaway's Consent to Intrafamily Adoption[6]

Mr. Conaway alleges the juvenile court erred in finding that he did not have the right to contest the intrafamily adoption of his children, N.E.C. and G.T.C., III, by Ms. Thompson. He argues that the allegations in the petition are false and are contradicted by Ms. Thompson's own statements throughout the case, as well as the

---

[6] Assignments of error numbers one through three are interrelated and will be jointly discussed.

testimony and evidence presented at trial. He contends that he had frequent contact with N.E.C. throughout the years. He further contends that his inability to contact G.T.C., III for a portion of time during his incarceration period was strictly due to intentional concealment by the person or persons who had physical custody of G.T.C., III, and that constituted just cause as it relates to his failure to communicate with his son.

In regard to the child support, Mr. Conaway avers that he introduced evidence showing he provided financial support for his children in 2017, 2021, and 2022, in addition to clothing, dinners, toys, family outings, and other items purchased directly by him. He argues that that failure to pay child support alone is insufficient to terminate a biological parent's rights, especially if the termination of parental rights is not in the children's best interest. Mr. Conaway asserts that the termination of his paramount right to custody of his children is unsubstantiated because the record does not contain clear and convincing evidence that he ever abandoned his children, refused to communicate with them, or refused to support them; and, the children have a right to see and know their only surviving parent.

Ms. Thompson maintains that she presented valid grounds for the intrafamily adoption of N.E.C. and G.T.C., III. She argues that Mr. Conaway did not pay any of the court ordered child support from the time of his December 2020 release from prison through November 2021, a period in excess of six months, and the juvenile court's finding that lunches, dinner and other purchases made by Mr. Conaway were not considered as child support was correct. She further argues that Mr. Conaway presented no evidence, other than his own self-serving testimony, as to his contact with one or both of his children. Ms. Thompson avers that Mr. Conaway cannot meet his burden of proving that the juvenile court's ruling is manifestly erroneous or clearly wrong.

Intrafamily adoptions, the adoption of a child by a grandparent or certain other

relatives, are authorized by La. Ch.C. arts. 1170 and 1243. *In re J.W.R.*, 21-691 (La. App. 5 Cir. 3/3/22), 340 So.3d 1242, 1246. Unless the parental rights have been terminated in accordance with law, consent to an adoption of a child or relinquishment of parental rights shall be required. *In re Adoption of B.C.F.*, 14-108 (La. App. 5 Cir. 6/24/14), 145 So.3d 509, 512, *writ denied*, 14-1502 (La. 7/21/14), 147 So.3d 681. When a petitioner authorized by La. Ch.C. art. 1243 has been granted custody of the child by a court of competent jurisdiction, the consent of the parent for an intrafamily adoption, as required by La. Ch.C. art. 1193, may be dispensed with upon proof by clear and convincing evidence that: (1) the parent has refused or failed to comply with a court order of support without just cause for a period of, at least, six months, or (2) the parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of, at least, six months. La. Ch.C. art. 1245. An intrafamily adoption terminates parental rights of the biological parent who has failed to contact and/or support the child without just cause. *In re D.L.D.*, 53,758 (La. App. 2 Cir. 1/13/21), 310 So.3d 314, 320, citing La. Ch.C. art. 1256.

The party petitioning for adoption has the initial burden of proving that a biological parent's consent is not required due to the parent's nonsupport of or lack of communication with the child by clear and convincing evidence. *In re J.W.R.*, *supra*. "To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable; that is much more probable than its nonexistence." *In re Adoption of B.C.F.*, 145 So.3d at 513, quoting *In re Intra Family Adoption of A.G.T.*, 06-805 (La. App. 5 Cir. 3/13/07), 956 So.2d 641, 648. The court is to hear and take into consideration information from all sources concerning the intrafamily adoption. *Id.*, citing *In re C.E.M., III*, 09-787 (La. App. 5 Cir. 1/26/10), 31 So.3d 1138, 1143-44. Once a *prima facie* case is proven, the opposing parent then has the burden of proving that his failure to provide support or

communicate with his child was with "just cause" or due to factors beyond his control. *In re J.W.R.*, 340 So.3d at 1246-47. The trial court must thereafter consider whether the adoption is in the best interest of the child. *Id.* at 1247. When factual findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard of review demands great deference to the trier of fact's findings, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. *In re Adoption of B.C.F.*, *supra*.

In the matter before us, Ms. Thompson, the children's maternal grandmother, filed a petition to adopt N.E.C. and G.T.C., III through an intrafamily adoption. At the time of filing, Ms. Thompson had been the legal custodian of the children since 2015. In her petition, Ms. Thompson alleged that Mr. Conaway, the children's natural father, refused or failed to visit, communicate with, or attempt to communicate with the children without just cause for a period of, at least, six months. She further alleged that Mr. Conaway failed to provide significant contributions to the care and support of the children for a period in excess of six months. In response, Mr. Conaway filed a letter, notifying the juvenile court of his desire to retain his parental rights and to have the children returned to him. The court then set a hearing on Mr. Conaway's opposition to the adoption.

At the April 11, 2023 hearing on opposition to the intrafamily adoption, Mr. Conaway testified as to his interactions over the years with G.T.C., III and N.E.C. He explained that he was incarcerated from April of 2015 through November of 2017 for possession with the intent to distribute pain pills and heroin. During that time, he testified that he did not provide any child support payments; but, he arranged one time for clothing to be brought to N.E.C. by his sister. He stated that he did not have any written contact with the children during that time because they were very young, and they were not brought to the jail for visits. However, he had occasional

phone communications with the children's mother prior to her passing in 2017.

After being released from incarceration in November 2017, Mr. Conaway testified that he was arrested 30 days later and convicted of second degree battery. He was then incarcerated from December of 2017 to December of 2020. He made no child support payments for the short period of time he was released or during his incarceration. Mr. Conaway attended a school event with N.E.C. in November 2017. The children did not visit with Mr. Conaway while he was incarcerated, and he did not send any written communication to them. Mr. Conway stated that he was able to frequently video chat with N.E.C.; however, he was only allowed to video chat with G.T.C., III a few times from August 2020 to January 4, 2021. Other than those few times, he claimed that he was not allowed to see or communicate with G.T.C., III.

When he was released from incarceration in December 2020, Mr. Conaway testified that he frequently communicated with N.E.C. through video chats. He also had visits with N.E.C. in 2022, when he would take her to lunch or dinner and buy her toys. He testified that he sent money to Ms. Thompson through Cash App payments. Mr. Conaway presented screenshots of his Cash App payment account showing payments to Ms. Thompson for $20 and $150 in November 2021 and $400 and $20 in January 2022.[7] He claimed that he would also send cash to N.E.C., but he would give it to Ms. Thompson's oldest son. Mr. Conaway insisted throughout his testimony that he had not aware of being ordered to pay child support for G.T.C., III and N.E.C.; however, he acknowledged the support order when he was presented with written proof of the July 21, 2015 court order requiring him to pay $25 per month for the children at issue.[8]

At the conclusion of the hearing, the juvenile court judge found that Mr.

---

[7] Mr. Conaway also presented proof of a payment of $100 to Ms. Thompson; however, there was no date associated with that payment. He testified that it was made between January and June of 2022.

[8] The court order was suspended during Mr. Conaway's incarceration.

Conaway did not make any child support payments from December 2020 to November 2021—an 11-month period. On that ground, the judge stated that he did not believe that Mr. Conaway had the right to oppose the adoption. The trial court did not consider the money Mr. Conaway spent on N.E.C. during his visits as child support. In reference to contact with N.E.C. and G.T.C., III, the judge found there was no just cause for Mr. Conaway's lack of contact with the children from 2015 to 2017, and that lack of contact was a possible second ground for Mr. Conaway's loss of his right to oppose the adoption. The judge opined that Mr. Conaway did not put forth enough effort to contact his children. The judge then decided to proceed with the intrafamily adoption.

Upon review of the record and the applicable law, we cannot find that the juvenile court was manifestly erroneous or clearly wrong in its determination that Mr. Conaway's consent was not required for the intrafamily adoption. The evidence presented to the juvenile court supports the finding that Mr. Conaway failed to comply with a court order of support without just cause for a period of, at least, six months—December 2020 through November 2021. Pursuant to La. Ch.C. art. 1245, that ground alone was sufficient to dispense of the need for Mr. Conaway's consent for this intrafamily adoption. Therefore, we find that the juvenile court properly determined that Mr. Conaway no longer had the right to oppose the adoption of G.T.C., III and N.E.C. by Ms. Thompson.

Granting of Intrafamily Adoption[9]

Mr. Conaway also alleges the juvenile court erred in granting Ms. Thompson's petition for intrafamily adoption. Although Mr. Conaway forfeited his right to oppose the adoption, we have reviewed whether the adoption was properly granted. Even upon a finding that a parent has lost his/her right to consent to the adoption, the adoption should only be granted when it is also found to be in the best

---

[9] Assignments of error four and five are interrelated and will be jointly addressed.

interest of the child. *In re Adoption of B.C.F.*, 145 So.3d at 515. The determination of whether an adoption is in the best interest of the child must be decided in each case on its own facts and is not absolute, and a determination of best interest is subject to reversal, if the record reveals manifest error in the determination. *Id.*

Based on our review of the entire record, we cannot find the trial court was manifestly erroneous in its determination that adoption is in the best interest of the G.T.C., III and N.E.C., and granting the intrafamily adoption.

## DECREE

For the foregoing reasons, we affirm the juvenile court's finding that Mr. Conaway did not have the right to oppose the intrafamily adoption of N.E.C. and G.T.C., III by Ms. Thompson. Each party is bear their own costs of the appeal.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **MAY 29, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 24-CA-47

### E-NOTIFIED
JUVENILE COURT (CLERK)
HON. BARRON C. BURMASTER (DISTRICT JUDGE)
ERIN A. FISHER (APPELLANT)          RAMONA G. FERNANDEZ (APPELLANT)          MITCHELL A. PALMER (APPELLEE)

### MAILED
ROY M. BOWES (APPELLEE)                    JUDITH A. DEFRAITES (APPELLEE)
ATTORNEY AT LAW                            ATTORNEY AT LAW
2550 BELLE CHASSE HIGHWAY                  700 CAMP ST
SUITE 200                                  NEW ORLEANS, LA 70130
GRETNA, LA 70053